(No. 15834.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN POWLOSKI *et al.* Plaintiffs in Error.

*Opinion filed February 19, 1924.*

1. CRIMINAL LAW—*when telephone conversations are admissible.* Telephone conversations which are relevant and material to the issue are competent if the parties to the conversations are identified, either by direct evidence or by facts and circumstances.

2. SAME—*when telephone conversation is relevant in prosecution for robbery.* A telephone conversation which the wife of a physician had with a person who wanted her husband on an urgent call is material and relevant to the issue in a prosecution for robbery of another physician who was held up while on his way to attend a "sick boy" in response to a later telephone message, where the defendants are identified as the persons present at the place where the telephone was used for the first call.

3. SAME—*when weapons in possession of defendant at time of arrest are admissible.* It is competent to prove that an accused, when arrested, possessed a weapon or tools suitable for the commission of the crime charged, even if no claim is made that the tools or deadly weapon was actually used in committing the crime; and a revolver found in the defendant's room at the time of his arrest, and which he admits is his, is admissible in a prosecution for robbery with a dangerous weapon.

4. SAME—*possession of stolen property must be exclusive in defendant to raise inference of guilt.* To raise an inference of guilt from the possession of stolen property in a prosecution for robbery or larceny it is essential that the possession be exclusive in the defendant, in the sense that it is personal and inconsistent with an independent possession by others.

5. SAME—*when possession of stolen property is exclusive.* In a prosecution for robbery, a watch which was taken from the prosecuting witness and which was found in the room of one of the defendants in the pocket of his vest may be admitted in evidence; and the fact that the room was visited several times by a police officer does not raise an inference that the watch was placed in the vest pocket by some person other than the defendant.

6. SAME—*when fact that jury sees exhibit which was excluded is not prejudicial.* Where the court declines to admit in evidence an exhibit consisting of the defendant's raincoat, which was cov-

ered with mud and clay of the same character as the mud and clay at the place where the stolen automobile was found, the fact that the jury had a view of the exhibit when it was offered is not necessarily prejudicial.

7. SAME—*what instruction as to the unexplained possession of stolen property is proper.* In a prosecution for robbery, an instruction stating that the recent and unexplained possession of stolen property soon after the theft was committed tends to establish the guilt of the person in whose possession it was found, and that such fact, if believed beyond a reasonable doubt to be a fact, is sufficient to authorize a conviction unless the inference of guilt thereby raised is overcome by other facts and circumstances in evidence creating a reasonable doubt of guilt, is properly given where it is applicable to the evidence.

8. SAME—*when verdict is sufficient to convict of robbery with deadly weapon.* Where both counts of an indictment charge the defendants with robbery while armed with a deadly weapon, a verdict finding the defendants guilty as charged is sufficient to support a judgment of conviction of robbery with a deadly weapon, even though the court gave the jury an instruction containing the form of verdict for the aggravated offense and also for the offense of robbery without a deadly weapon.

WRIT OF ERROR to the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding.

FAULKNER & MOORE, for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, JOSEPH P. STREUBER, State's Attorney, VIRGIL L. BLANDING, and WILLIAM M. P. SMITH, for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

A few minutes before midnight of January 26, 1923, Charles Kiser, a doctor living in Madison, was called by telephone to go to an appointed place near the corner of Tenth street and Alton avenue, and near the Polish Catholic church, to attend a sick boy. The designated place was in Madison, ten blocks from his residence, and he drove to the place in a Ford coupe. When he reached the place a masked man armed with a revolver pointed it at him and

told him to "Stick 'em up!" A second masked man armed with a gun came across the street and gave the same command. The doctor handed the masked men his medicine case and held his hands up. His watch and money were taken from him and the robbers drove away in his Ford coupe. On his way home he telephoned to the police an account of the robbery, and the next morning the plaintiffs in error, John Powloski, Joe Prince and Tosia Stydjal, were arrested at a rooming house in Madison for the crime. The Ford coupe was found the next day after the robbery near a pond not far from the place of the robbery, mired in the mud up to the axles. An indictment was returned into the circuit court of Madison county containing two counts, in each of which the plaintiffs in error were charged with robbery while armed with a deadly weapon. There was a plea of not guilty, and upon a trial the jury returned a verdict finding the plaintiffs in error guilty of robbery in manner and form as charged in the indictment and finding their ages as follows: Prince twenty years, Stydjal twenty years and Powloski about nineteen years. The plaintiffs in error were sentenced to the Illinois State reformatory, at Pontiac, and the writ of error in this case was sued out for a review of the record.

The defendants were together about seven o'clock in the evening of January 26, 1923, at the White Eagle pool room, and remained together in that and other places in Madison practically all the time until after the robbery, visiting the soft drink parlor of Sarah Lagod, the soft drink parlor of George Sekora, and the coffee house of Tony Conchef, who is nicknamed "Car Shops." The People offered evidence, to which no objection was made, of the following facts: The defendants were in the soft drink parlor of Sarah Lagod twice on the night of January 26, the first time about 10:30 or 11:00 o'clock, when they went into the kitchen. At a later visit they asked for the telephone, and Sarah opened the door and let the three of them

into the room where the telephone was. She said it was then pretty late—about 12:00 o'clock. Prince and Powloski visited Sekora's place at about 11:30 o'clock, and Sekora heard them talking about telephoning a doctor to visit a sick "kid." Prince asked permission to use the telephone, and he called the office of Dr. L. D. Darner, in Granite City. Sekora testified that in telephoning the defendants did not get their party, and said, "Well, if you cannot come here right away we don't want you." They then looked at the telephone book and went out.

After 11:15, and before 12:00 o'clock, Mrs. Darner, who was uncertain of the time, received a telephone call for the doctor, who was out answering calls. She told the party telephoning that the doctor was not there and asked if they would leave any message. The reply was they wanted someone right away, and they would try somewhere else if the doctor was not there. At the close of the evidence for the People the defendants moved the court to exclude the testimony of Mrs. Darner concerning the telephone message for her husband, and the motion was denied. Telephone conversations which are relevant and material to the issue are competent if the parties to the conversations are identified either by direct evidence or facts and circumstances. In this case the parties were identified and the telephone conversation was material and relevant, as will hereafter, be seen. The court did not err in denying the motion. *Miles* v. *Andrews,* 153 Ill. 262; *Godair* v. *Ham Nat. Bank,* 225 id. 572.

For some time before the robbery the defendant Stydjal occupied a small room in a rooming house at Fifteenth street and Madison avenue, in Madison. It contained a carpet, table, single bed, a mattress or pallet on the floor, and had hooks on the walls for hanging up clothing. The defendant Powloski, whose home was at Gary, Indiana, had occupied the room with Stydjal for several nights before the robbery, and on that night all the defendants occupied

the room. Two police officers came to the room at about 9:30 in the morning after the robbery and arrested the defendants and asked them where their revolvers were. Stydjal denied they had any, but the officers found a large revolver and a smaller one under the mattress on the floor, upon which Powloski was sleeping. Stydjal admitted the ownership of the larger revolver but denied any knowledge of the other. The large revolver alone was admitted in evidence, and it is contended that the court erred in the ruling because it was not shown that the revolver was connected with the robbery. It is competent to prove that an accused, when arrested, possessed a weapon or tools suitable for the commission of the crime charged, even if no claim is made that the tools or deadly weapon was actually used in committing the crime. *Williams* v. *People,* 196 Ill. 173; *People* v. *Allegretti,* 291 id. 364; *People* v. *Maciejewski,* 294 id. 390; *People* v. *Cunningham,* 300 id. 376.

When the defendants were arrested they were searched but none of the stolen property was found. The testimony for the People was that no examination was made except of wearing apparel which the defendants had on their persons. The defendant Stydjal testified that the officers not only searched the clothing that the defendants had on, but that which was hanging up in the room. After the arrest one of the police officers went to the room occupied by the defendants. Two children, twelve and fourteen years old, respectively, who were scrubbing the hallway in front of the stairway leading to the room, said that the officer was at the room three or four times. The evidence was that he had the key and he said he was there more than once. The last time he took with him the young man called "Car Shops" and Tony Fitzurka, and they found Dr. Kiser's watch in the vest of Powloski hanging on a hook in the room. In the vest there was also a business card of a lawyer in Gary, Indiana, and a book. Powloski said that the vest was his, and the fact was not at any time denied.

The card, and the book without the contents, were allowed in evidence as tending to identify the vest as the property of Powloski, and the vest having been proved to belong to Powloski, the watch was offered and received in evidence. It is argued that this was error under the rule that possession of stolen property soon after a theft or robbery, in order to be *prima facie* evidence of guilt, must be exclusive. To raise an inference of guilt from the possession of stolen property it is essential that the possession be exclusive in the defendant in the sense that it is personal and inconsistent with an independent possession by others. (*Conkwright* v. *People,* 35 Ill. 204; *People* v. *Sturdyvin,* 306 id. 138.) The evidence in this case met that requirement by showing the possession of the watch in the vest of Powloski in the room occupied by him. Powloski did not testify and the possession was unexplained. The mere fact that the officer was in the room more than once was insufficient to raise a suspicion that the watch was placed in the vest by any other person than Powloski.

It is also said by counsel that the defendants were prejudiced by the production of a gabardine coat owned by Powloski. Its ownership was proved, and it was covered with mud and clay of the same character as the mud and clay where the Ford was found. The court refused to admit the coat in evidence, but it was necessarily brought within the view of the jury. That is true of any exhibit offered in evidence, and being excluded as evidence there was no ground for complaint .

The court gave the jury the following instruction:

"The court instructs the jury, as a matter of law, that the recent and unexplained possession of stolen property soon after the theft was committed tends to establish the guilt of the person in whose possession it was found. That fact, of itself, if you believe from the evidence beyond a reasonable doubt it is a fact, is sufficient to authorize a conviction unless the inference of guilt thereby raised is over-

come by other facts and circumstances in evidence which create in the minds of the jury a reasonable doubt of such guilt."

The instruction was a correct statement of the law and applicable to the evidence. *Miller* v. *People,* 229 Ill. 376; *People* v. *Everett,* 242 id. 628; *People* v. *Knight,* 308 id. 182; *Williams* v. *People, supra.*

The court gave an instruction containing forms of verdicts, in one of which the jury were permitted to find the defendants guilty of robbery when armed with a deadly weapon, and in the other a form with a finding that the defendants were guilty but were not armed with a deadly weapon at the time the offense was committed. The verdict was, guilty of robbery in manner and form as charged in the indictment, and both counts of the indictment charged the defendants with robbery while armed with a deadly weapon, and the verdict was a finding that they were guilty as charged. *People* v. *Pleitt,* 308 Ill. 323.

The evidence was sufficient to establish the guilt of the defendants beyond a reasonable doubt. The explanation offered for the call on Dr. Darner that he had been the attendant of Powloski after an automobile accident when Powloski lived in Madison and before removing to Indiana and that he might have been called to treat him, is inconsistent with the fact that Powloski did not need any treatment but was going around from place to place in apparent good health, and the talk between Prince and Powloski was that the call was to be for treatment of a "kid." When it was found Dr. Darner was not at his office, Mrs. Darner was told that if he could not come right away he was not wanted. After the telephone call, when Dr. Darner was not at his office, the defendants looked at the telephone book and went out, and the call for Dr. Kiser summoning him from his office ostensibly to visit a sick boy in a dark and lonely spot followed. The evidence of these telephone calls was relevant and material to show that the defendants had

planned to call a doctor to attend upon some fictitious child at a designated place for the purpose of a contemplated robbery, which took place. Laying aside that evidence, the facts that the defendants were together during the evening and after the robbery, that they occupied Stydjal's room during the night and were found there in the morning, and the watch of Dr. Kiser, which had been taken during the robbery, was found there in the vest of Powloski, lead to the necessary conclusion that the defendants were at the designated place to commit the robbery in pursuance of their plan.

The evidence established the guilt of the defendants beyond a reasonable doubt, and the judgment is affirmed.

*Judgment affirmed.*

---

(No. 15828.—Reversed and remanded.)
THE PEOPLE *ex rel.* Harry W. Greer, County Collector, Appellant, *vs.* BERTHA B. HUNT, Appellee.

*Opinion filed February 19, 1924.*