**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Joe Charles WALTERS, Defendant-
Appellant.**

**No. 72–2360.**

United States Court of Appeals,
Ninth Circuit.

April 16, 1973.

Rehearing Denied May 29, 1973.

Laurie S. Harris (argued), Deputy, Federal Public Defenders, Los Angeles, Cal., for defendant-appellant.

Earl E. Boyd, Asst. U. S. Atty. (argued), William D. Keller, U. S. Atty., Eric A. Nobles, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before BARNES, KOELSCH and ELY, Circuit Judges.

KOELSCH, Circuit Judge.

Joe Walters appeals from a judgment convicting him of robbery of a national bank by force and violence [18 U.S.C. § 2113(a)].

During the early afternoon of Thursday, January 25, 1972, two men entered the Food Stamp Center department of the Security National Bank in Los Angeles, and committed the robbery with which this appeal is concerned. After one of the two robbers—the evidence as to which one is not clear—disarmed the bank guard at gunpoint, both proceeded to the tellers' cages and filled their pockets with money before fleeing.

Unfortunately for the robbers, they were soon identified and arrested. Shortly before the robbery, a passerby had noticed a green Buick automobile park in the vicinity of the Bank. Her attention was attracted by the unconventional garb of the driver, who was wearing a large "floppy" brown hat and black shirt, and of the passenger, who had donned a woman's red wig. Deeming them "suspicious" characters, she wrote down the Buick's license number and, a few moments later, observed them run back to the vehicle and drive away at high speed.

That evening police officers and agents of the F.B.I., using the information gained from the automobile license number, went to the house of Zelma Shyne, the Buick's owner. The officers' knock on the front door of the house was answered by Zelma's nine-year-old son who, after asking the officers whether they were "from juvenile," went down a hall to the rear of the house, apparently to notify his mother. However, he left the door ajar and the officers, looking in, saw Walters enter the front room. Since he answered the description of one of the robbers, the several officers immediately entered with drawn guns and, while three of them detained Walters there, the others proceeded to the rear of the house looking for the second suspect. He wasn't there but in a bedroom they found Zelma, her uncle and her mother standing nearby. Zelma told the officers that she had let Walters use the Buick earlier that day. She also stated that Walters, upon his return, had given her a considerable sum of money, which she produced from under the pillow of her bed and handed to an officer.

The officers then continued their inquiry and asked whether Walters had also given her a hand gun that afternoon. In response, she drew out a nickel-plated pistol, but the officers expressed no interest in it, perhaps because the only gun which either robber had displayed during the robbery was a dark-colored snub-nosed revolver. Zelma then produced such a revolver from under her mattress.

Walters was formally arrested without further ado. On the way to the police station, the officers questioned Walters, following a *Miranda* warning given by F.B.I. Agent Chamberlain. He gave several stories, all of them exculpatory. He explained that he had loaned the Buick to one Floyd Masterson that day and that Masterson had given him the money, including the two marked bills found upon his own person, and the revolver which he had given to Zelma. Throughout his questioning, he denied any complicity in the robbery.[1]

---

1. However, Masterson's girl friend, Mary Jane Williams, who appeared at trial as a witness for the government, testified that both Walters and Masterson were together at the latter's apartment shortly before the time of the robbery, that they left together, and reappeared approximately an hour later.

The officers immediately went to Masterson's apartment and arrested him. They found one of the stolen bills on his person and in the search of his apartment, pursuant to a search warrant, they also found a woman's red wig, a large floppy brown hat, and the bank guard's gun.

(1) The first paragraph of the one-count indictment charged both Walters and Masterson with bank robbery with force and violence, as defined in 18 U.S.C. § 2113(a), but the second paragraph added the 18 U.S.C. § 2113(d) provision to the charge against Walters. The result was that Masterson stood charged with "simple" bank robbery, while Walters was accused of the more aggravated, or subsection (d), form of the same offense, because of the use of a dangerous weapon. Green v. United States, 365 U.S. 301, 306, 81 S.Ct. 653, 5 L.Ed. 2d 670 (1961).

During the government's case in chief the court, on motion of the district attorney, for reasons that need not be discussed, dismissed the subsection (d) portion of the charge against Walters.

■ Walters now contends that such dismissal constituted an impermissible amendment of the indictment. The Fifth Amendment, in express language, makes the bringing of indictments the exclusive province of the grand jury. Any amendments to an indictment must be made by the grand jury alone. Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887). However, the action taken by the court in this case did not encroach upon the prerogative of the grand jury at all. Here the court simply withdrew a portion of the charge as laid; the offense remained the same, but the degree was reduced. See Salinger v. United States, 272 U.S. 542, 47 S. Ct. 173, 71 L.Ed. 398 (1926); Thomas v. United States, 398 F.2d 531 (5th Cir. 1967).

(2) Zelma was a witness for the prosecution. Because she was convalescing from recent surgery, she was permitted to testify out of order, as the government's second witness, before any proof of the robbery or of Walters' participation in it was presented. The dark-colored snub-nosed revolver, which she gave the officers at her home, was thus conditionally admitted into evidence as Exhibit 3–A, upon her identifying it as the gun given her by Walters on the day of the robbery.

Subsequently the government put on considerable proof, not only to establish the corpus delicti, but also tending to prove that Walters was an active participant in the commission of the robbery.

When the government rested, the court entertained Walters' motion, among others, to strike from evidence the gun, which had been only conditionally admitted. That motion was denied.

■ Walters vigorously contends that the court's admission of the gun into evidence, and the denial of his motion to strike, was prejudicial error. He stresses the fact that neither the bank guard nor any other eyewitness to the robbery was able to identify Exhibit 3–A as a gun used during the robbery. On this basis, he argues that the gun was irrelevant because not connected to the commission of the robbery, and that it served only to impermissibly show his bad character. He relies on Moody v. United States, 376 F.2d 525 (9th Cir. 1967). In Moody we held irrelevant, and prejudicially erroneous, proof that the accused kept a revolver in his car. Moody involved a charge of smuggling narcotics and, as we noted, a revolver "could only be regarded by the jury as indicating that the appellant was a bad man engaged in a criminal enterprise, who might shoot anybody who attempted to frustrate the illegal importation of heroin, although in the circumstances of [that] case the presence of the loaded gun was not relevant to any matter which the jury was called upon to decide." 376 F.2d at 532.

But Moody affords Walters no comfort. The commission of the offense in Moody did not involve the use of force. Here it did.

A gun lacked relevance in *Moody* because it was not related to the crime of smuggling. But that is not true of the crime of robbery. In robbery force, or a threat of force, is essential. Obviously a gun is a useful instrument for a robber. Professor Wigmore points out: "As a general principle, then, the *existence* * * * *of the physical* * * * *means* to do an act is admissible as some evidence of the possibility or probability of the person's doing * * * it." 1 Wigmore, Evidence, § 83 (3rd ed. 1940). And Mr. Wharton, in his work on criminal evidence, writes: "It is also relevant to show that the defendant owned or had access to any article with which the crime was or could have been committed. * * * The possession by the defendant of a weapon or instrument of crime is relevant although there is no evidence that it was used in the commission of any particular crime, but there must be evidence that some crime was committed." Wharton, Criminal Evidence, § 203 (12th ed. 1955). Nor is the proposition confined to text writers. Thus, in State v. Montgomery, 175 Kan. 176, 261 P.2d 1009 (1953), the Supreme Court of Kansas observed that:

"The books are full of cases holding that where an accused is identified as having been at or near the scene of a crime about the time of its commission evidence showing that he owned, possessed or had access to any articles with which the crime was or might have been committed is competent." (Citations omitted). 261 P.2d at 1011.

And in People v. Powloski, 311 Ill. 284, 142 N.E. 551 (1924), the Supreme Court of Illinois, answering an argument that the court erred in admitting an unidentified gun into evidence where the charge was robbery, declared:

"[i]t is competent to prove that an accused, when arrested, possessed a weapon or tools suitable for the commission of the crime charged, even if no claim is made that the tools or deadly weapon was actually used in committing the crime." 142 N.E. at 553.

More recently the Second Circuit, in reviewing a robbery conviction, has had occasion to consider and reject this same argument:

"Direct evidence of such possession would have been relevant to establish opportunity or preparation to commit the crime charged, and thus would have tended to prove the identity of the robbers, the only real issue in this trial. [citations omitted]."

United States v. Ravich, 421 F.2d 1196, 1204 (2d Cir. 1970), cert. denied, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66. See also, United States v. Fisher, 455 F.2d 1101 (2d Cir. 1972).

(3) Walters may not complain of the court's refusal to grant his pretrial motion to order excluded at trial any evidence of his prior state robbery conviction. He did not take the stand, and that conviction was never offered in evidence. As this court has recently held: "In electing not to take the witness stand, [the defendant] waived any objection regarding the admissibility of evidence concerning [his] * * * prior convictions." United States v. Murray (9th Cir. 1973) (Slip opinion at 24).

(4) Walters' remaining contentions lack any evidentiary support. The record plainly shows that the money and gun obtained from Zelma at her house were voluntarily given to the officers. Zelma so testified. They were not the product of a search.

The record similarly reveals that the officers fully advised Walters of his *Miranda* rights before questioning him. Thus, the statements which he made to the officers were not rendered inadmissible.

The judgment is affirmed.

ELY, Circuit Judge (concurring):

I concur in the majority's opinion. The only troublesome question involves the admission into evidence of a pistol

not proved to have been used in the robbery. The majority correctly quotes from United States v. Ravitch, 421 F.2d 1196 (2d Cir. 1970), cert. denied, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970). I think it desirable, however, to emphasize another portion of the Second Circuit's language in that opinion. It reads:

"Notwithstanding the relevance of the guns and the ammunition, the trial judge would have been justified in excluding them if he decided that their probative value was outweighed by their tendency to confuse the issues or inflame the jury."

421 F.2d at 1204. This qualifying language is significant. It more completely announces the proper and desirable standard, conferring upon our district judges the power to exercise reasonable discretion to the end that an accused not be unnecessarily or unfairly prejudiced. I have no reason to believe that my Brothers object to this recognition of the power of our district judges in that respect.