(No. 34746.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* URSLEY FLOWERS, Plaintiff in Error.

*Opinion filed September 18, 1958.*

HERBERT M. SPECTOR, of Rock Island, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BERNARD J. MORAN, State's Attorney, of Rock Island, (FRED G. LEACH, WILLIAM H. SOUTH, and CHARLES T. MILLER, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Ursley Flowers, hereinafter referred to as defendant, was on January 3, 1955, indicted in Rock Island County, charged with the offense of robbery and armed robbery of one Sylvia Barnett. He was thereafter tried before a jury in the circuit court of Rock Island County and found guilty

of armed robbery, and was on March 17, 1955, sentenced to the Illinois State Penitentiary for not less than 10 years, nor more than 40 years. It is from this conviction that defendant now brings his writ of error, appearing first *pro se,* and now with the aid of counsel appointed by this court.

On December 30, 1954, Joe's Steak Market in East Moline was robbed at about the hour of 8:30 to 9:00 P.M. A lone bandit entered the market brandishing a gun and demanded that Sylvia Barnett, the cashier, empty the cash register and place the money in a sack. Clarence Barnett, the manager of the market and the husband of the cashier, entered from the cooler while the robbery was in progress. At the direction of the robber he stood about 15 feet away and observed the commission of the crime. The robber wore a handkerchief over the lower portion of his face, was about five feet ten inches tall, wore a cap, jacket and trousers, and was about 25 or 30 years old. The robber took about $630, including 15 two-dollar bills whose serial numbers were registered in the business office and were kept in the register at all times.

Mr. Barnett called the police who obtained a description of the robber. The chief of police of East Moline, upon the basis of the description, ordered his officers to arrest this defendant. The police visited several taverns that evening and the next day, searching for defendant. They discovered him the next day, about 2:50 P.M., in Helena Bultincks' tavern in East Moline. They arrested defendant, took him to the police station, and there, upon search, found $562.03 on him, including the 15 marked two-dollar bills.

Charles Barnett identified defendent as the robber and defendant was thereafter indicted for robbery and armed robbery.

Defendant was brought to trial before a jury. A motion to suppress the 15 marked two-dollar bills as evidence

was denied. Defendant contended that he received about $300 of the money discovered on his person, including the 15 two-dollar bills, in a crap game in the rest room of the Moline depot earlier in the day of December 31, 1954. A written statement taken from defendant by two polygraph examiners for the State Bureau of Identification was admitted over objection, to impeach the defendant's alibi and discredit his testimony. The jury found defendant guilty of armed robbery as charged in count II of the indictment, and he was thereafter sentenced to the penitentiary.

Defendant now prosecutes his writ of error to this court contending (1) that the verdict and judgment are against the manifest weight of the evidence, (2) that the court erred in refusing to give all of the instructions tendered by defendant and in giving certain instructions tendered by the State, (3) that the court erred in overruling defendant's motion for directed verdict, (4) in admitting certain evidence offered by the State, (5) in refusing defendant the right to extensively cross-examine certain witnesses, (6) and in refusing to suppress certain evidence, (7) that the State knowingly offered perjured testimony, (8) that the State's Attorney's argument was inflammatory and prejudicial, (9) that he was denied a fair and impartial trial, (10) that he was denied counsel in violation of due process of law, (11) that a fatal variance exists between the indictment and the evidence, as there is no allegation that the money taken was then in the charge, care, custody and control of Sylvia Barnett, and (12) that the court erred in permitting defendant to be impeached by written statements given for the purpose of aiding lie-detector examiners, and hence erred in permitting testimony given in connection with a lie-detector proceeding.

It is first urged by defendant that the verdict and judgment are against the weight of the evidence. The evidence is of such length that we cannot, with good conscience, set it forth in detail in this opinion. It does not appear from

a complete review thereof, however, that the evidence is so improbable as to raise a reasonable doubt of defendant's guilt. (*People* v. *Lion*, 10 Ill.2d 208; *People* v. *Woodruff*, 9 Ill.2d 429.) Clarence Barnett, the manager of Joe's Steak Market, observed the robber from a distance of 15 feet, in good light for one or two minutes, saw his general physical make-up, that he wore a cap and a handkerchief across the lower part of his face, saw his eyes and was of the impression that the robber was 25 or 30 years old. He described the robber to the police, and identified him positively the next day at the police station, later from a picture, thereafter in jail and at the trial. He did not pick the defendant out of a line-up, but that fact goes only to the weight to be accorded the evidence of identification.

In addition, the defendant, when arrested, had a large amount of money in his pockets, slightly less than the amount taken from the market, and including the marked two-dollar bills. He claimed to have won the money in a crap game in the Moline depot. He is substantiated in that claim by Wesley Williamson and Louis Herrera, whose testimony as to facts surrounding the crap game is contradictory in many respects. Moreover, Williamson claimed the game to have occurred on a date he applied for employment at the Farmall Works. Employment applications in Farmall's records indicate he applied on the previous day, which was before this robbery occurred. In addition, the ticket clerk and baggageman at the depot failed to observe any crap game in the rest room although they were in that room during the time the game purportedly occurred. The credibility of all of these witnesses was for the jury, who saw and heard them testify, and the evidence not being so improbable as to raise a reasonable doubt of defendant's guilt, this court will not reverse the conviction. *People* v. *Woodruff*, 9 Ill.2d 429.

Defendant complains of certain instructions given at the request of the People. He insists that the court erred

in giving one instruction to the effect that recent possession of stolen property tends to establish the guilt of the person in whose possession it is found. The instruction is not properly identified, but an instruction of this nature does appear on page 93 of the abstract. An instruction in the same language has been found to be a correct statement of law, (*People* v. *Powloski,* 311 Ill. 284,) and this rule has been restated and approved on numerous occasions. (*People* v. *Finch,* 394 Ill. 183.) The instruction was likewise correctly given in this case, and did not tend to cast any improper burden upon the defendant.

Defendant additionally complains of a certain instruction in relation to alibi given at the request of the People. Again the instruction is not sufficiently identified. However, every instruction given relating to alibi has been previously approved by this court upon the allegation of the same errors urged here. (*People* v. *Thompson,* 321 Ill. 594.) These instructions, likewise, were properly given in this case and cast no improper burden upon the defendant.

It is urged that the court erred in overruling defendant's motion for directed verdict at the conclusion of all of the evidence, as the facts and circumstances in the State's case were not sufficient to establish defendant's guilt. We have already determined that the verdict and judgment were in accord with the manifest weight of the evidence. The motion for directed verdict for defendant was, therefore, properly overruled by the court.

The court admitted into evidence upon rebuttal People's exhibit 6-A purporting to be an application by defendant's witness, Wesley Williamson, for employment at Farmall. The court also admitted into evidence certain statements taken in connection with a lie-detector test. Defendant charges that the court erred in admitting this evidence for the reason that no proper foundation was laid for the admission of People's exhibit 6-A, and the statement taken in connection with the lie-detector test was highly preju-

dicial, incompetent and improper, and was not a complete statement by defendant in his own words.

It appears from the record that at the time People's exhibit 6-A was first offered no proper foundation was laid for its admission. The People then laid a proper foundation by identifying Wesley Williamson's signature, and defendant's counsel stated that the application record was the best evidence and raised no further objection to its admission. Defendant has therefore waived the right to object to the admission of this exhibit. *People* v. *Trefonas,* 9 Ill.2d 92.

During the cross-examination of defendant, the People, in an effort to impeach defendant, read certain statements from People's exhibit 5. Out of the presence of the jury the court was informed that defendant's counsel and the State's Attorney agreed to a lie-detector test of defendant, but the information gained in the test was not to be used against defendant. Defense counsel stated that it was his "impression" that any discussions or statements with any deputy would not be used against his client. The State's Attorney disagreed as to that "impression," and defense counsel agreed it was a difference of opinion. Exhibit 5 is a statement made to the two polygraph examiners prior to the test, and was not a part of the lie-detector test. It was not a confession, but more in the nature of a statement of innocence, nevertheless in conflict, in many respects, with defendant's testimony. It was written out by one of the examiners and signed by defendant. The defendant identified his signature affixed to People's exhibit 5, and his initials thereon, and recalled signing it. The defendant did not dispute that the statement included what he told the examiners. He merely said that the statement is incorrect as to what actually occurred. A written statement made by a witness who admits his signature thereon, which is inconsistent with his testimony on the stand, when identified by him on cross-examination, is admissible to impeach him.

*Gerrard* v. *Porcheddu,* 243 Ill. App. 562; *Hapke* v. *Brandon,* 343 Ill. App. 524.

Defendant additionally insists that the statement was improperly used, as it was obtained by trick in the preparation of a lie-detector test, and it suggested to the jury that a lie-detector test had been given to defendant.

The most that can be said for defendant's position is that defendant's counsel claimed to be under the "impression" that anything said by defendant during, in preparing for, or travelling to the test would not be used against him. This is not the same kind of situation as in *People* v. *Sims,* 395 Ill. 69, where a written unsigned statement was taken from defendant, while a lie detector was strapped to her against her wishes, and when she was without counsel. This statement is more nearly akin to the voluntary statements of defendant, made on the way to take a lie-detector test, which were received in evidence in *People* v. *Stevens,* 11 Ill.2d 21. The statement used here was voluntary, and not made due to any trick, threats or promises. If a statement was otherwise voluntary, the fact that the accused was vigorously questioned in the absence of his attorney, friends or relatives would not render the statement inadmissible for impeachment purposes. *People* v. *Nelson,* 320 Ill. 273.

It is nowhere suggested in the evidence before the jury in this case that the defendant submitted to a lie-detector test, or that this statement was obtained in preparation for such a test. One of the examiners did testify that he is employed as chief polygraph examiner for the State Bureau of Identification. Neither he nor his partner testified before the jury that they did anything other than take this statement from defendant. The statement was not taken during the lie-detector test. The cases relied upon by defendant as rendering this statement improper are all cases wherein the fact of a lie-detector test, or the refusal to submit to one, was made known to the jury. The evidence here does not

suggest a lie-detector test to the jury to the prejudice of defendant. The one witness volunteered that he was a polygraph examiner, but did not negate the fact that he was associated with the State Bureau of Identification and might do many other types of investigation. We have determined here that the evidence justified the verdict and judgment. Such a case will not be reversed for errors in the admission of evidence unless they are harmful. (*People* v. *Raymond,* 296 Ill. 599.) The error here, if any, is minor and certainly not reversible.

The defendant urges that the court erred in refusing defendant the right to extensive cross-examinations of certain witnesses and in limiting the direct examination by defendant of Trinidad Giminez. Numerous abstract references are set forth by defendant, but a thorough examination fails to disclose any interference by the court with defendant's cross or direct examinations. A review of the entire record fails to sustain defendant's general allegation that the court exhibited an adverse attitude toward the position of the defendant.

Prior to the trial of this cause the defendant filed a verified motion to suppress as evidence the money taken from his person when he was searched. He maintains that the arrest was without probable cause, that he was not charged or accused or held for the commission of any crime at the time of his arrest, and hence his constitutional immunity against unreasonable search and seizure was violated.

Defendant was arrested without a warrant. Nevertheless, the police from the time of the first investigation of the offense were of the belief that defendant was the robber, in view of the description given them, and an order to arrest defendant was then given. The police immediately began to search for defendant and were of the opinion, from their preliminary search, that defendant had left town. Other circumstances discovered by the police strengthened their belief that defendant was the culprit. Consequently,

when defendant was discovered the officers properly arrested him and the subsequent seach was legal. When a criminal offense has in fact been committed, although not in the presence of a police officer, an officer may make an arrest without a warrant when he has reasonable grounds for believing the person arrested committed it. Where the arrest is so justified, an accompanying search without a warrant is also justified, and evidence taken from the person as a result of that search is ordinarily admissible against him. (*People* v. *Kalpak,* 10 Ill.2d 411; *People* v. *Doody,* 343 Ill. 194; *People* v. *Clark,* 9 Ill.2d 400.) The court, therefore, properly refused to suppress the money taken from the person of this defendant as evidence.

Defendant's contention that his conviction was secured through the use of perjured testimony, known to the People to be perjured, is not worthy of our consideration. The testimony of Mrs. Irma Culver was in part in error, through a misunderstanding and confusion between two robberies of her employer involving two-dollar bills. Mrs. Culver discovered her error and the matter was clarified completely before the jury.

Defendant cites the argument of the State's Attorney as inflammatory and prejudicial. The defendant does not point out wherein the argument was prejudicial or improper. Moreover the arguments of counsel are not abstracted for our consideration. No error is presented, therefore, for our review.

It is urged that defendant was denied a fair and impartial trial, in that one of his witnesses, Louis Herrera was intimidated by the State's Attorney. He complains that Herrera was held for four hours, threatened and intimidated. The record discloses that Herrera was then in jail for another offense. He testified that he voluntarily went to Moline to be interrogated. He further testified that the State's Attorney and the officers only told him that if he lied in his testimony he could go to the penitentiary.

This is merely an attempt to impress upon a person, who was not familiar with either the law or the English language, the penalty for perjury. We fail to find, from a review of Herrera's testimony, any evidence of threats or intimidation by the People. Moreover, in his testimony Herrera attempted to substantiate the alibi of defendant, although his story differed in some respects from that of defendant and Wesley Williamson. He was not, therefore, intimidated so as to deny his testimony to defendant.

Defendant insists that he was denied the benefit of counsel when the verdict of the jury was announced in open court. However, the common-law record clearly states that defendant and his counsel were present at all stages of the trial including that when the verdict was returned in open court.

Finally, defendant contends that a fatal variance exists between the indictment and the evidence, in that the indictment fails to allege that the money taken in the robbery was in the charge, care, custody and control of Sylvia Barnett, as shown by the evidence. Instead, the indictment alleged that defendant "feloniously and violently did make an assault upon one Sylvia Barnett and did then and there put the said Sylvia Barnett in bodily fear and danger of her life, and against her, the said Sylvia Barnett's will, feloniously and violently, by force and intimidation did steal, take and carry away from the person of the said Sylvia Barnett, the money, goods and valuable things of the said Sylvia Barnett * * *." An indictment for robbery is sufficient which states the offense in the terms and language of the statute: that money or other valuables are taken from another by force or intimidation. (*People* v. *Jordan*, 303 Ill. 316.) Consequently this indictment is sufficient. Moreover, a complete examination of the record in this case fails to disclose that this asserted variance between the evidence and the indictment was ever raised until this review. We have previously held that an asserted vari-

ance between the proof and the indictment must be raised on trial, or it will be deemed waived. (*People* v. *DeFelice,* 376 Ill. 312.) This assertion of variance has consequently been waived by defendant and is not now properly heard by this court.

We have reviewed all of the many assertions of error presented by defendant and his counsel and fail to find merit in any of them. The judgment of the circuit court of Rock Island County is, therefore, affirmed.

*Judgment affirmed.*