**The People of the State of Illinois, Defendant in Error, v. John D. Harper (Impleaded) and Charles L. Evans (Impleaded), Plaintiffs in Error.**

Gen. Nos. 51,038, 51,039.

First District, Fourth Division.

January 15, 1968.

Jay T. Frank, Martin J. Rubin, and Elias Levin, of Chicago, for plaintiffs in error.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James C. Veldman, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendants were indicted for the burglary [1] of the premises of the Adult Education Center of the Board of Education of the City of Chicago at 6535 South Stewart Avenue (Indictment No. 651235), for the burglary of the Convent of the Religious of the Institute of the Blessed Virgin Mary (Indictment No. 651068) located at 6541 South Stewart Avenue and for the aggravated battery [2] of Sister Alma (Indictment No. 651069). Both defendants were tried jointly on all three indictments and were found guilty by a jury of all charges. Defendant Evans received consecutive sentences of 30 to 60 years on one burglary, 30 to 60 years on the other burglary and 7 to 10 years on the aggravated battery. Harper received sentences of 7 to 15 years on each of the burglaries and 5 to 10 years on the aggravated battery, all to run concurrently. Both defendants appealed from the judgments of conviction and the sentences. The defendants have presented this appeal jointly.

The evidence presented on behalf of the State showed that on the evening of March 17, 1965, Sister Alma of

[1] Ill Rev Stats 1963, c 38, § 19–1:

(a) A person commits burglary when without authority he knowingly enters into, or without authority remains within a building, house trailer, watercraft, aircraft, railroad car, or any part thereof, with intent to commit therein a felony or theft.

(b) Penalty.

A person convicted of burglary shall be imprisoned in the penitentiary for any indeterminate term with a minimum of not less than one year.

[2] Ill Rev Stats 1963, c 38, § 12–4(a):

(a) A person who, in committing a battery, intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement commits aggravated battery and shall be imprisoned in a penal institution other than the penitentiary not to exceed one year or in the penitentiary from one to 10 years.

the Religious of the Institute of the Blessed Virgin Mary lived in that order's convent at 6541 South Stewart in Chicago. Shortly before 9:00 p. m. on that date Sister Alma checked all of the doors and windows of the convent and also checked a door which opened into a tunnel connecting with the Loretta High School [3] which was next door. Some time before three on the following morning, she was awakened by footsteps coming up the stairs from the first floor of the convent. Through the partially opened door of her room Sister Alma heard two persons talking in the hallway and, thinking that someone might be ill, she asked if anything was wrong. A whispered voice told her to go back to sleep and an unsuccessful effort was made to close her bedroom door, but when the sounds from the hall continued, she rose to investigate. As she emerged from her room, Sister Alma was surprised to see two men in the hallway. The man closest to her raised his arm and she could see that he was holding a long stick like a broom handle. She backed into her room and the man pursued her, striking her with the instrument he held and causing her to fall to the floor. Her assailant continued to strike her in spite of her efforts to ward off his blows with her left arm, until the sounds of approaching footsteps indicated that others in the convent had been aroused. The assailant then fled with his companion, who had been standing in the doorway of Sister Alma's room during the beating.

By this time Mother Sophia Hinker, who occupied the room directly across the hall, had been aroused by the screams of Sister Alma and had gone out into the hall. She saw a figure in the doorway of Sister Alma's room and found herself suddenly face to face with a man whom she later identified as defendant, John Harper. In the light from the stairwell she was able to get a good look

---

[3] Located at 6535 South Stewart and at that time rented to the Adult Education Center of the Chicago Board of Education.

at Harper as he brushed past her and fled down the stairs. At this same time a second man, whom Mother Hinker identified as defendant, Charles Evans, came out of Sister Alma's room carrying in his hand what appeared to be a stick nearly two feet in length. He too fled down the stairs to the convent's first floor. Mother Hinker went down the back stairs to the convent's basement and found that entry had been made through the rear door which connected with the tunnel leading across to the neighboring high school building. Glass had been removed from this door. Further investigation revealed that the door at the other end of the tunnel, which leads into the high school building, was also open. Entry into the high school building had been made by breaking in a rear window.

Sister Alma was immediately taken to St. Bernard's Hospital for treatment. She testified:

> "I got two stitches in the back of my head. And they put like a compress on my forehead. I had been struck over the left eye. And I had quite a good size bump there. And my left arm was put in a sling. They thought, at first, it was broken. The wrist was very badly hurt. Then I had a big bump on the top of my left arm. And then shots and everything as soon as I got in."

Sergeant Buczek testified that defendant Evans told him that he and a companion had broken into the school building and then the convent and that when they were discovered by Sister Alma he had beaten her with a stick he was carrying. This statement was reduced to writing and signed by Evans.

On behalf of the defense testimony was presented to the effect that John Harper spent the night of March 17–18, 1965, sleeping in a Clark Gasoline Station at 63rd and Princeton Avenue in Chicago. Harper himself stated that he was locked out of the apartment in which he was

staying and that for want of a better place to go he spent the night in the gasoline service station. No evidence was presented on behalf of Charles Evans.

■ On appeal Harper contends the court committed reversible error in denying his motion for a severance. In his motion Harper stated that his codefendant Evans had signed a written confession which implicated him and that the confession would prejudice him. The confession stated:

"Me and Johnie [indicating John Harper] went to the convent at 65th and Stewart and broke a window on the side. We then went in and were taking cans of fruit juice, about thirty pounds of sugar, and were getting ready. We took this out of the school next to the convent. We then went into the convent and were taking some silver when a nun hollered at us. I had a stick and beat her to make her keep quiet. We then ran out. The sugar and juice we had put in the basement at 337 West 65th Street."

When the confession was read to the jury the words "Johnie, indicating John Harper" were eliminated and the word "blank" substituted so that it read "Me and blank went to the convent," etc. Harper argues that the elimination of his name did not dismiss from the minds of the jury the inference that "blank" was Harper inasmuch as there were two defendants being tried jointly. In People v. Johnson, 13 Ill2d 619, 150 NE2d 597, the word "blank" was substituted for defendant's name wherever it appeared. The Supreme Court held that the substitution could not have deceived anyone as to the identity of the person mentioned in the confession. We find it was reversible error to deny the motion for a severance. However, we cannot reverse without remanding because the positive identification of Harper by Mother Hinker was believed by the jury and is sufficient to support a verdict of guilty. People v. Solomon, 24 Ill2d 586, 182 NE2d 736,

and People v. Stewart, 62 Ill App2d 428, 211 NE2d 154. Therefore as to Harper, the judgments are reversed and the three cases (Case Nos. 651068, 651069 and 651235) remanded to the Circuit Court for a new trial as to him.

█ Evans does not challenge the sufficiency of the evidence as to the burglaries but complains that the State failed to prove the charge of aggravated battery beyond a reasonable doubt. In People v. Cavanaugh, 18 Ill App2d 279, 152 NE2d 266, at page 289, the court cited with approval the following language from a Nebraska case:

> "The term 'great bodily injury,' as employed in the statute, is perhaps not susceptible of a precise legal definition. It is, however an injury of a graver and more serious character than an ordinary battery; and whether a particular injury is within the meaning of the statute is generally a question of fact for the jury and not of law."

We believe that the evidence of Sister Alma as to the beating administered by Evans supports the conviction. No expert medical testimony was necessary.

Evans urges a reduction of sentences on the grounds that they were excessive and unconstitutional. In People v. Taylor, 33 Ill2d 417, 211 NE2d 673, at page 424, the court stated:

> "We have previously stated that '[w]here it is contended that the punishment imposed in a particular case is excessive, though within the limits prescribed by the legislature, this court should not disturb the sentence unless it clearly appears that the penalty constitutes a great departure from the fundamental law and its spirit and purpose, or that the penalty is manifestly in excess of the proscription of section 11 of article II of the Illinois constitution

which requires *that all penalties shall be proportioned to the nature of the offense*. [Citations.]' (People v. Smith, 14 Ill2d 95, 97.) Such principles have not been violated here. We believe that under the now applicable statute granting reviewing courts the power to reduce sentences imposed by trial courts where circumstances warrant (Ill Rev Stats 1963, c 38, par 121-9(b)(4), such authority should be applied with considerable caution and circumspection, for the trial judge ordinarily has a superior opportunity in the course of the trial and the hearing in aggravation and mitigation to make a sound determination concerning the punishment to be imposed than do the appellate tribunals." (Emphasis supplied.)

■ In the instant case both defendants committed the two burglaries—their conduct did not differ until Sister Alma was assaulted by Evans. For this additional crime both were indicted and found guilty—Evans as the principal—Harper as an accessory. Harper was sentenced 7 to 15 years on each burglary and 5 to 10 years (10 years is the maximum) on the aggravated battery to run concurrently, while Evans received consecutive sentences of 30 to 60 years on each burglary and 7 to 10 years on the aggravated battery, also consecutive, or a total maximum sentence of 130 years compared to a maximum of 15 for Harper. We believe that the penalties applied to Evans on the burglary charges were not proportioned to the nature of the offenses.

Neither defendant had a previous felony record. When Harper was sentenced to 7 to 15 years for each of the burglaries, the sentences to run concurrently, this constituted a determination by the court of the appropriate sentences for these two crimes apart from the consideration to be given to Evans' actual assault. Thus a sentence of 7 to

186

15 years on each burglary to run concurrently would appear to be appropriate for Evans also.

 Both defendants were also found guilty of aggravated battery and it was appropriate, in the court's discretion, to impose a heavier sentence upon the one who committed the actual battery. This was done and Harper was given 5 to 10 while Evans was given 7 to 10 years. We cannot say that under all the circumstances Evans' sentence for the aggravated battery was excessive. If, therefore, Evans is sentenced to 7 to 15 years on each burglary, the sentences to run concurrently, and the sentence of 7 to 10 years for the aggravated battery runs consecutively to the sentences for the burglaries, the sentences would be "proportioned to the nature of the offense."

We therefore reduce Evans' sentences to 7 to 15 years for each of the burglaries to run concurrently and affirm the sentence of 7 to 10 years for the aggravated battery, this sentence to be consecutive to the sentences for the burglaries.

Reversed and remanded as to Harper. Affirmed as to Evans in Case No. 651609. Sentences modified as to Evans in Case No. 651608 and Case No. 651235 and judgments affirmed as modified.

McCORMICK, P. J. and ENGLISH, J., concur.