THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROBERT HENDRICKS, Defendant-Appellant.

First District (1st Division)    No. 62427

Opinion filed August 2, 1976.

James Geis and Lynn Sara Frackman, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

Defendant, Robert Hendricks, was indicted with Arthur Jones (not a party to this appeal) for armed robbery. At their joint trial Hendricks and Jones were represented by the same assistant public defender. A jury found the two men guilty as charged. Defendant Hendricks was sentenced to a term of 10 to 25 years, and has appealed.

The complainant, Mrs. Choon Bae Roh, could understand English, but had difficulty with the language. She, therefore, testified through an interpreter of the Korean language. In April of 1974 she and her husband opened a wig shop on the south side of Chicago. The shop consisted of two rooms with an open doorway or passageway between them. During the early evening of April 23, 1974, the complainant and her two small children were alone in the store.

She testified that about 6:30 p.m. the complainant's young son opened the front door to admit two men, Jones and Hendricks, who the complainant thought were customers. The front door locked automatically behind the men after they entered. After asking about the price of several wigs, Jones pulled out a gun. Hendricks was looking aside at this time. After the complainant saw the gun, she fell to the floor unconscious. The next thing she remembered was Jones grabbing her and telling her to stand up. Jones snatched her wristwatch and put it in his pocket.

Hendricks then asked the complainant where her money was. As he asked this, Hendricks searched the drawer of a table in the front room which contained $32 on that day. Jones dragged complainant by her wrist a short way into the back room, and then searched the complainant's bag. Hendricks remained in the front room and started to put wigs into a paper bag.

While complainant was sitting on the floor in the passageway, she saw the two men begin to walk back and forth and look outside. Jones put his gun in a wastebasket in the back room. As he did so, the complainant heard the noise of breaking glass. Both the front and back doors had been locked. Police officers then entered the store. The complainant told the policemen $32 was missing from the drawer of the table and showed them where the gun was.

Chicago Police Officer Furtek testified that he and his partner, Officer Drefs received a radio call on the evening of the incident and proceeded

to the shop. Through the window he observed Jones and Hendricks pulling the complainant to the rear of the store. He kicked out the glass in the window, unlocked the front door from the outside and entered the premises with his revolver drawn. He then arrested Jones and Hendricks. The only people in the store besides the police were Jones, Hendricks, the complainant and her two small children. Officer Furtek recovered a loaded gun from the trash can, $32 from Hendricks and a lady's watch from Jones. Officer Furtek noticed bags of wigs on the counter and more wigs on the floor behind the counter.

Officer Drefs testified that upon arriving at the wig store with Furtek he observed two men entering the back room of the store. His testimony was that only Jones was pulling the victim toward the back and that Jones was holding a gun while doing so. Officer Drefs went to the rear of the store and observed Hendricks opening the back door. A locked steel gate prevented Hendricks' exit. Officer Drefs then went to the front where Officer Furtek handed him the gun and the $32.

Neither defendant testified. Doresa Hendricks, wife of the defendant, testified that on the day before the robbery she and her husband cashed his paycheck and paid a number of bills. After expenses were met, they had over a hundred dollars between them. Mrs. Hendricks kept $50 and gave her husband over $50. They had a conversation about whether she could buy a wig. Mrs. Hendricks testified that she had never seen Arthur Jones before the trial, that he had never been a guest in her home and that her husband had never mentioned him.

The issues raised by this appeal are: was defendant proven guilty beyond a reasonable doubt; was it proper to instruct the jury that it could infer guilt from exclusive, recent, unexplained possession of stolen goods; and did the joint representation of Hendricks and Jones deprive Hendricks of the effective assistance of counsel.

■■ Defendant first contends that no credible evidence was presented that he was anything other than an innocent bystander at the scene of the crime. Mere presence at the scene of a crime does not suffice to establish guilt. (*People v. Ramirez* (1968), 93 Ill. App. 2d 404, 236 N.E.2d 284.) However, the testimony of Mrs. Roh establishes that the defendant demanded to know where her money was kept, took it from the drawer where it was kept and stuffed wigs into a bag. These are not the acts of an innocent bystander. Hendricks was looking aside while Jones pulled out a gun, but under the circumstances of this case, such behavior is most plausibly seen as that of a lookout rather than an innocent customer.

■■ Defendant attacks Mrs. Roh's testimony as incredible. But it is for the trier of fact to determine the credibility of the witnesses and the weight to be given to their testimony. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) Furthermore, Mrs. Roh's testimony was

corroborated on a number of important points. Defendant's possession of $32—the exact amount stolen from the drawer—is especially strong corroboration. (*People v. Montgomery* (1973), 16 Ill. App. 3d 127, 130, 305 N.E.2d 627.) The verdict of a jury will not be disturbed unless the evidence is so unreasonable, improbable or unsatisfactory as to leave a reasonable doubt as to the defendant's guilt. (*People v. McDonald* (1975), 62 Ill. 2d 448, 456, 343 N.E.2d 489.) In the present case the evidence supporting the verdict was ample.

Defendant urges that it was error to give People's Instruction No. 1, which stated:

> "If you find that the defendant has exclusive possession of recently stolen property, and there was no reasonable explanation of his possession, you may infer that the defendant obtained possession of the property by armed robbery."

Defendant argues that this instruction (a form of Illinois Pattern Jury Instruction Criminal No. 13.21) should not be given in an armed robbery prosecution, because the unexplained possession of recently stolen property bears no relationship to the element of armed robbery pertaining to use or threat of force with a dangerous weapon. However, the purpose of the inference mentioned in the instruction is not to prove the "force" element of robbery, but rather that the defendant was one of the persons involved in the armed robbery described by the witnesses. (*People v. Curtis* (1972), 7 Ill. App. 3d 520, 524-25, 288 N.E.2d 35.) The instruction as to possession of stolen property must be read with all other instructions given to the jury. (*People v. Finch* (1946), 394 Ill. 183, 191, 68 N.E.2d 283.) These instructions adequately informed the jury of the elements of armed robbery. It is, therefore, not error for a jury to receive an IPI Criminal No. 13.21 instruction in an armed robbery case. *People v. Flowers* (1958), 14 Ill. 2d 406, 411, 152 N.E.2d 838; *People v. Powloski* (1924), 311 Ill. 284, 289-90, 142 N.E. 551; *People v. Curtis* (1972), 7 Ill. App. 3d 520, 524-25, 288 N.E.2d 35.

In the alternative, defendant argues that even if the instruction is sometimes permissible in armed robbery prosecutions, it should not have been given in this case because there was insufficient evidence that Hendricks in fact had possession of stolen property. However, the jury could reasonably infer that the $32 recovered from Hendricks was from Mrs. Roh's table drawer. She testified that $32 was the amount in the drawer just before the defendants entered, and that it was missing when the defendants were apprehended minutes later.

■■ Defendant also urges that the instruction was improper because Doresa Hendricks established an explanation for defendant's possession of the $32—namely, that he went to the shop to buy her a wig. But People's Instruction No. 1 refers to a *reasonable* explanation, and the jury

is not obligated to believe any explanation the defendant may offer. (*People v. Hanson* (1968), 97 Ill. App. 2d 338, 342, 240 N.E.2d 226.) The jury was justified in finding defendant's explanation unreasonable, especially in the face of complainant's testimony that her drawer contained $32. Mrs. Hendricks testified that it was she who contemplated buying a wig for herself. It is unlikely that defendant would buy a wig for his wife without bringing her along to try it on, especially when she had told him that she wanted to buy the wig. It is even less likely that defendant would take along exactly the amount of money stolen from Mrs. Roh. People's Instruction No. 1 was properly given.

Finally, defendant alleges he was denied effective assistance of counsel because he and Jones were represented by the same Assistant Public Defender. It is argued that the defendant's theory was that he was merely an innocent patron at the store, and that Jones was the guilty party. Defendant asserts that defense counsel did not emphasize facts that would tend to exonerate Hendricks because these facts would tend to implicate Jones.

Defendant does not assert that Jones' defense and his were necessarily inconsistent for their counsel could argue that neither defendant was shown to be anything more than an innocent patron. Neither defendant testified and consequently neither placed the blame on the other. Defendant argues that the very reason he and Jones did not testify may have been because they were represented by the same attorney. However, defense counsel stated to the court that her clients had decided not to take the stand because they feared being impeached by their prior convictions.

By placing the blame on Jones, Hendricks would not have put himself in a more advantageous position. Had defense counsel stressed the overwhelming nature of the evidence against Jones, she would merely have been emphasizing the obvious. She would not be responding to the almost equally overwhelming evidence against Hendricks. Defense counsel answered this evidence as well as she could. There is no reason to believe separate counsel could have done any better.

An examination of defense counsel's closing argument demonstrates that she made every plausible argument in favor of Hendricks. She relied upon the hysterical state of the complainant at the time of the crime, the difficulty of observing what was going on in the front room of the store from the back room, the fact that one officer did not see Hendricks do anything illegal, the lack of evidence that Jones and Hendricks knew each other before the crime, the lack of direct evidence that the money found in Hendricks' pocket belonged to the complainant, and the fact that Hendricks did not have the complainant's watch in his pocket. Counsel did not refer to Mrs. Hendricks' testimony, but this testimony in no way

inculpated Jones, and there is therefore no reason to believe that defense counsel's failure to mention the testimony was due to her joint representation of Jones and Hendricks. Any defense counsel who argued that Mrs. Hendricks' testimony established that her husband was in the store with innocent purpose would risk being met with devastating replies in the prosecutor's closing argument.

■■ Where a defendant does not demonstrate that a conflict of interest actually exists, this court should not indulge in speculation to determine whether separate counsel should have been provided. (*People v. McCasle* (1966), 35 Ill. 2d 552, 556, 221 N.E.2d 227; *People v. St. Pierre* (1975), 25 Ill. App. 3d 644, 324 N.E.2d 226; *People v. Dickens* (1974), 19 Ill. App. 3d 419, 311 N.E.2d 705; *People v. Chapman* (1965), 66 Ill. App. 2d 124, 214 N.E.2d 313.) While a sufficiently serious conflict of interest on the part of defense counsel will justify a reversal without regard to whether defendant was prejudiced (*e.g., People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441, where defense counsel had represented corporation allegedly burglarized by the defendant), defendant has established no such conflict here, and he has failed as well to establish he was prejudiced. (See *People v. Jones* (1976), 40 Ill. App. 3d 850, 353 N.E.2d 79.) Defendant has not demonstrated that he was denied the effective assistance of counsel.

The judgment of conviction is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and BURKE, J., concur.