THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIE EARL McNEAL, Defendant-Appellant.

First District (3rd Division)   No. 76-546

Opinion filed December 21, 1977.

Michael G. Cheronis and Carolyn Jaffe, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Renee G. Goldfarb, Assistant State's Attorneys, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:
Willie Earl McNeal was charged in a three-count indictment with the murder of Willie Davis and the attempt murder of Officer Joseph Kosala of the Chicago Police Department. He was tried jointly with co-defendant Ricky Smith in a bench trial. Co-defendant Ricky Smith was found not guilty. McNeal was acquitted on the charge of attempt murder but was found guilty of murder and was sentenced to 14 to 20 years in the penitentiary. He now appeals that conviction, raising three issues for review: whether he was proven guilty of murder beyond a reasonable

doubt; whether the court's refusal to grant his motion for severance denied him his constitutional rights to a fair trial and to confront witnesses; and whether he was denied his constitutional right to the effective assistance of counsel.

On the morning of June 7, 1974, Officers Joseph Kosala and Edward Jolick of the Chicago Police Department were patrolling on Division Street in the vicinty of the Cabrini Green housing project in Chicago. Shortly before 2 a.m. they heard loud "reports" coming from an area south of where they were patrolling. The officers immediately drove south on Larrabee Street and then east on Oak Street and, after parking their car, they began walking north towards the area from which they had originally heard the shots. At this time, the officers heard a second volley of shots coming from the same general area. Both officers testified that each volley consisted of three to five shots.

Approximately 8 to 10 seconds after hearing the second volley of gunfire, the officers observed two individuals running towards them from the same general area from which the gunfire had emanated. These two individuals were later identified as Willie Earl McNeal and Ricky Smith. The officers situated themselves behind some parked cars and when the defendants were within approximately 20 to 30 feet, the officers jumped up and yelled "Halt, police."

At the trial, Officer Kosala testified that as he watched McNeal running, he noted that McNeal was carrying a gun in his hand. Upon being accosted by the police, McNeal turned to his right, squatted down and pointed the revolver at the officer. While Officer Kosala did not see McNeal pull the trigger of the gun, he claimed that he saw McNeal's hand muscles flex and heard two "clicks." Kosala then saw McNeal fall to the ground and the revolver slip out of his hands. He further stated that he saw no persons other than McNeal and Smith in the immediate vicinity where they were apprehended. Officer Jolick's testimony was substantially the same except that he claimed McNeal was carrying what appeared to be a weapon in his hand and that he stated that he did see several persons standing in a hallway of one of the project buildings located approximately 100 yards away from the place where McNeal and Smith were seized.

While apprehending McNeal, Officer Kosala recovered the gun which McNeal allegedly had dropped. The weapon was a .22-calibre blue steel two-inch revolver. Nine expended shell casings were found in the gun's chamber.

The body of Willie Davis was found by Officer David Suerth, of the Chicago Police Department, lying in a firelane located approximately one-half block from where McNeal and Smith were captured. Officer Suerth had responded to a radio call that a man had been shot in that

vicinity and arrived at the scene at about 2 a.m., less than one minute after first hearing the radio report. Upon his arrival, he saw no one else in the area and observed no one running from the area. Approximately a minute and a half after Officer Suerth discovered the body, Officer Kosala joined him.

At the trial, it was stipulated that the forensic pathologist responsible for conducting the autopsy on Davis' body concluded that the cause of his death was a bullet wound to his chest. It was further stipulated that the gun recovered from McNeal was of the same calibre as the murder weapon. The ballistics evidence, however, could not demonstrate that McNeal's weapon and the murder weapon were, in fact, the same gun.

The police report on the incident was written by Officer Jolick. The report described McNeal's alleged attempt to fire at Officer Kosala in the following terms:

"R.O.'s [Reporting Officers] observed a gun in the hand of McNeal and at that time R.O.'s ran from their concealed position and the offenders were running straight at R.O.'s. At this time one offender McNeal pointed a gun at R.O.'s. Upon seeing the R.O.'s had their way blocked they stopped and McNeal threw his gun to the ground."

At approximately 5:30 a.m. Smith made a written statement regarding the incident. The evidence shows that before making the statement Smith was properly advised of his constitutional rights. Prior to trial, both McNeal and Smith moved for severance; McNeal based his motion, in part, upon the prejudicial effect which the admission of Smith's statement into evidence might have on his own defense. The trial court, noting that Smith's statement did implicate McNeal, gave the State three options with respect to the use of Smith's statement: to excise any reference to McNeal in the statement, to not offer the statement into evidence, or to join in the motion for severance. The State chose the first option and the motions for severance were denied. The defendants, both represented by the same counsel, waived a jury trial.

McNeal further raised an objection to the statement when it was offered into evidence at trial. The trial judge sustained these objections, as they related to McNeal, and specifically instructed himself to disregard Smith's statement in adjudicating the case against McNeal. Smith had moved, at the start of the trial, for the statement to be suppressed on the ground that it had not been voluntarily made. The motion was heard concurrently with the trial and was subsequently denied.

While Smith chose not to testify in his own defense, McNeal did testify. He stated that he and Smith had just entered one of the buildings in the project when he heard and then saw gunfire coming from above. Believing that someone was firing at him, he and Smith ran out of the

building. McNeal stated that while running he heard bullets hit near him. McNeal then saw two men come out from behind parked cars, identifying themselves as police officers. Upon their command to halt, he dropped to the ground. While McNeal admitted that he owned the blue steel revolver which the police recovered when they apprehended him, he claimed that he never had the gun in his hand; rather, he asserted that he was carrying the gun on his side and that it fell out when he dropped to the ground. McNeal claimed that he had purchased the weapon approximately two hours earlier somewhere on the west side of Chicago for $25 and that the spent cartridges were in the gun when he purchased it. McNeal denied that he pointed the gun at Officer Kosala or that he shot Davis.

Smith was acquitted on all counts while McNeal was found guilty of the murder of Davis but not guilty of the attempt murder of Kosala. The defendant's motion for a new trial, based in part upon the court's denial of his motion for severance and upon the admission of Smith's statement into evidence, was denied.

McNeal's first contention on appeal is that absent the consideration of Smith's statement to the police, the evidence adduced at trial was insufficient to prove him guilty beyond a reasonable doubt. The essence of his argument is that the evidence is equally conducive to the theory that an unknown person, who was able to escape undetected from the police, was responsible for the shooting. Since the State's case is based exclusively on circumstantial evidence, McNeal asserts the existence of another reasonable theory negates the conclusion that he is guilty beyond a reasonable doubt.

■■ We agree with McNeal that the evidence presented by the State is entirely circumstantial but this fact, alone, is insufficient to reverse his conviction. A conviction may be sustained upon circumstantial evidence as well as upon direct evidence; it is only necessary that the proof of circumstances must be of a conclusive nature and tendency leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused, and no one else, committed the crime. (*People v. Bernette* (1964), 30 Ill. 2d 359, 197 N.E.2d 436.) If, based upon the circumstantial evidence, there exists no other reasonable hypothesis of guilt, the State has met its burden of proof. (*People v. Garrett* (1975), 62 Ill. 2d 151, 339 N.E.2d 753; *People v. Lewellen* (1969), 43 Ill. 2d 74, 250 N.E.2d 651.) The trier of fact is not required to search out a series of potential explanations compatible with innocence and elevate them to the status of reasonable doubt. *People v. Huff* (1963), 29 Ill. 2d 315, 194 N.E.2d 230; *People v. Greene* (1975), 27 Ill. App. 3d 1080, 328 N.E.2d 176.

Here, the State's evidence shows that while on patrol, two officers of the Chicago Police Department heard a volley of gunfire. They immediately

proceeded to the area from which the gunfire had emanated and, while so proceeding, they heard a second volley of shots. In all, they heard between six to 10 shots fired during the two rounds of gunfire. Within seconds after the second volley, the officers observed McNeal and Smith running from the area where the shots had been heard. One officer testified that he saw McNeal running with a gun in his hand while the other officer stated that McNeal had what appeared to be a weapon in his hand. The body of Willie Davis was subsequently found in the same general area where the officers had heard the gunfire. Upon arrest, McNeal had in his possession a blue steel revolver containing nine expended cartridges. The ballistics evidence showed that the gun was of the same calibre as the weapon from which the fatal bullet had been fired. Such evidence, we believe, is sufficient to convict McNeal of the murder of Willie Davis. We are not compelled to accept McNeal's own version, for the credibility of the witnesses is for the trier of fact to determine and its determination is not to be disturbed on review unless it is based upon evidence which is so unsatisfactory as to raise a reasonable doubt as to the defendant's guilt. *People v. Jones* (1975), 32 Ill. App. 3d 354, 336 N.E.2d 583; *People v. Lewis* (1974), 18 Ill. App. 3d 281, 309 N.E.2d 784.

We do not agree with McNeal that he was convicted on the improbability of his story. A conviction cannot be based upon the weakness of the defendant's evidence but rather upon the strength of the State's case. (*People v. Poltrock* (1974), 18 Ill. App. 3d 847, 310 N.E.2d 770.) In view of our belief that the State introduced sufficient evidence to establish its burden of proof, this principle has not been violated.

■■ Furthermore, we do not feel that based upon the evidence adduced at trial, there exists a reasonable hypothesis of innocence such as would necessitate a reversal of McNeal's conviction. The defendant asserts on appeal, as he argued before the trial court, that another, unidentified party escaped undetected by the police. The trier of fact, however, did not find such a theory to be reasonable and we agree. Beyond his own testimony, McNeal cites, in support of his theory, the testimony of Officer Jolick. In particular, he relies upon the statement of the police officer that, at the time of McNeal's arrest he saw several other persons standing in a hallway of a building about 100 yards away and his statement that individuals could have escaped in the opposite direction. Such evidence, we feel, is insufficient to establish a reasonable possibility that another person did escape undetected from the scene of the shooting. Insofar as McNeal's theory maintains its status as mere speculation, we believe that McNeal has been proven guilty of murder beyond a reasonable doubt.

McNeal next suggests that the refusal of the lower court to grant his

motion for severance denied him his constitutional rights to a fair trial and to confront witnesses. He argues that due to the joint trial, the trier of fact had available for its consideration the inculpatory statements made by Smith and that because Smith chose not to testify, the veracity of those statements could not be challenged. McNeal asserts that under the principles established in *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, his conviction must be reversed.

■■ Admittedly, the situation presented here is closely analogous to that presented in *Bruton*, but with the significant distinction that, unlike *Bruton*, the defendant here was convicted in a bench trial. A careful reading of the Supreme Court's opinion in *Bruton* reveals that a principal factor in the court's decision to find a deprivation of constitutional rights in the joinder of defendants where one defendant has made an out-of-court statement which inculpates another defendant was the limitations upon the ability of a jury to restrict their consideration of that evidence. Even where the jury is properly instructed on the extent to which they may use such statements, the court feared that there exists a high probability that the jury would extend their use of such evidence beyond the permissible limits:

> "It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information. Nevertheless, as was recognized in *Jackson v. Denno*, [378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774], there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." (*Bruton v. United States,* 391 U.S. 123, 135, 20 L. Ed. 2d 476, 484-85, 88 S. Ct. 1620, 1627.)

A trial judge, on the other hand, due to his particular training and experience, is generally believed to have a greater ability to restrict his use of improper evidence. When sitting as the trier of fact, a trial judge will generally be presumed to have considered only competent evidence. (*People v. Earl* (1966), 34 Ill. 2d 11, 213 N.E.2d 556; *People v. Cox* (1961), 22 Ill. 2d 534, 177 N.E.2d 211, *cert. denied* (1963), 374 U.S. 855, 10 L. Ed. 2d 1076, 83 S. Ct. 1925.) This increased capacity to compartmentalize his consideration of evidence suggests that the joinder of defendants in *Bruton* types of situations where the trier of fact is a judge does not serve to deprive a defendant of his Sixth Amendment right to confrontation. A similar conclusion has been reached in other jurisdictions which have addressed the issue. (*State v. Gleason* (Me. 1976), 359 A.2d 308; *Brown v. State* (Fla. App. 1971), 252 So.2d 842; *Commonwealth v. Mangan* (1971), 220 Pa. Super. Ct. 54, 281 A.2d 666; *Cockrell v. Oberhauser* (9th Cir. 1969), 413 F.2d 256, *cert. denied* (1970), 397 U.S. 994, 25 L. Ed. 2d 401, 90

S. Ct. 1130.) Thus, we hold that McNeal has not been deprived of his right to a fair trial or his right to confrontation.

■■ We also do not believe that the refusal to grant severance in this instance contravened the court's statutory power to grant severance. Section 114—8 of the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, par. 114—8), provides that:

> "If it appears that a defendant or the State is prejudiced by a joinder of related prosecutions or defendants in a single charge or by joinder of separate charges or defendants for trial the court may order separate trials, grant a severance of defendants, or provide any other relief as justice may require."

This power to grant severance is discretionary with the trial court and will not be overturned unless it is deemed to be an abuse of discretion. (*People v. Ross* (1968), 41 Ill. 2d 445, 244 N.E.2d 608; *cert. denied* (1969), 395 U.S. 920, 23 L. Ed. 2d 237, 89 S. Ct. 1771; *People v. Hoover* (1976), 35 Ill. App. 3d 799, 342 N.E.2d 795.) Even prior to the Supreme Court's decision in *Bruton*, it was established in Illinois that when a motion for separate trials is based on the fact that a co-defendant's confession implicates the moving defendant a severance should be granted unless the prosecution declares that the admission will not be offered in evidence at the trial, or if offered, that there will be eliminated therefrom any and all reference to the party applying for a severance. *People v. Miller* (1968), 40 Ill. 2d 154, 238 N.E.2d 407; *cert. denied* (1968), 393 U.S. 961, 21 L. Ed. 2d 375, 89 S. Ct. 401; *People v. Clark* (1959), 17 Ill. 2d 486, 162 N.E.2d 413.

In the present case the record clearly indicates that the trial court stated that the admissibility of the statement was limited to Smith. It was the trial judge who demanded that McNeal's name be stricken from the document. Furthermore, the judge continually sustained defense counsel's objections to the admission of the statement insofar as it applied to McNeal and specifically instructed himself to disregard any application of the statement as to McNeal. In view of the trial judge's appreciation of the limited admissibility of the evidence, the fact that he knew that it inculpated McNeal is irrelevant. The cases relied upon by McNeal— *People v. Johnson* (1958), 13 Ill. 2d 619, 150 N.E. 597; *People v. Hodson* (1950), 406 Ill. 328, 94 N.E.2d 166; *People v. Harper* (1968), 91 Ill. App. 2d 179, 234 N.E.2d 171—are inapplicable inasmuch as they all involved jury trials. Thus, we find that the trial judge committed no error in refusing to grant McNeal's motion for severance.

The defendant's final contention is that he was deprived of his right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution. He presents a two-pronged argument in support of his position. First, McNeal asserts that because both defendants chose the same counsel and the interests of

the two defendants did not coincide, a joint trial effectively deprived him of his constitutional rights. Secondly, McNeal asserts that his attorney did not provide him with competent representation.

■■ The Sixth Amendment guarantee of the effective assistance of counsel is interpreted as requiring representation by counsel whose loyalties lie exclusively with his client. (*Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457; *People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441.) This right has been made applicable to the States via the Fourteenth Amendment. (*Gideon v. Wainwright* (1963), 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792.) Where multiple defendants are represented by the same counsel, the right to the effective assistance of counsel may be denied if such joint representation prevents counsel from giving his complete loyalty to his clients. If the defendant can demonstrate that a serious conflict of interest actually exists, the mere fact of multiple representation requires reversal. (*People v. Hendricks* (1976), 41 Ill. App. 3d 178, 353 N.E.2d 177.) Where no such conflict can be established, the defendant must demonstrate actual prejudice. (*People v. Hendricks; People v. Jones* (1976), 40 Ill. App. 3d 850, 353 N.E.2d 375.) Where a defendant fails to demonstrate the existence of an actual conflict of interest, the court should not indulge in speculation to determine whether separate counsel should have been provided. *People v. McCasle* (1966), 35 Ill. 2d 552, 221 N.E.2d 227; *People v. Hendricks.*

■■ Under the facts of the present case, we do not feel that McNeal has demonstrated either actual prejudice or a conflict of interest sufficient to find that he was deprived of his right to the effective assistance of counsel. As McNeal recognizes, if there exists any antagonism between his own position and that of Smith, it arises from the existence of Smith's out-of-court statement; in particular, McNeal is concerned that his counsel's decision not to have Smith testify precluded McNeal from challenging the validity of Smith's assertions on cross-examination. However, because the statement was not admitted into evidence against McNeal and was properly disregarded by the trial judge, McNeal suffered no harm by the unavailability of Smith for cross-examination. Nor do we believe that the mere existence of the inculpatory statement created such a conflict in the interests of the two defendants that counsel was, in some sense, inhibited in his preparation of McNeal's defense. Therefore, we conclude that the joint representation did not deprive McNeal of his constitutional rights.

McNeal also asserts that his counsel's inept manner of defending his case served to deny him the effective assistance of counsel. McNeal points to three specific facets of the case which he asserts are indicative of the incompetency of his counsel: that his attorney failed to object to the

admission of the portions of Smith's statement which accused McNeal of engaging in unrelated criminal activity; that his counsel proceeded to a bench trial rather than requesting a jury trial; and that his counsel failed to object to the inclusion of certain juvenile records in McNeal's presentence report. Initially, McNeal also challenges the validity of the standard for the competency of trial counsel generally recognized by Illinois courts, urging this court to follow the lead of a number of Federal courts and adopt a stricter standard. However, because we believe that the examples which McNeal offers do not illustrate any incompetence on the part of his attorney, we find that it is unnecessary to address this issue.

As his first example of his counsel's alleged incompetence, McNeal points to the fact that his attorney permitted him to waive a jury trial. The attorney knew the trial judge had read an unexpurgated copy of Smith's statement to the police. Therefore, once severance had been denied, McNeal suggests that it was extremely prejudicial for him to be tried by the judge. However, the record shows that the trial judge explicitly explained the distinction between the bench trial and a jury trial to McNeal and that McNeal specifically chose the bench trial. Upon such a record, it seems certain that the jury waiver was knowingly made by McNeal. (*People v. Bush* (1963), 29 Ill. 2d 367, 194 N.E.2d 308, *cert. denied* (1964), 376 U.S. 966, 11 L. Ed. 2d 983, 84 S. Ct. 1129.) Admittedly the record also suggests that the decision to waive a jury was made upon the advice of McNeal's attorney; not only did McNeal's attorney indicate to the court the defendant's intention to waive a jury before the judge addressed McNeal, but also that he had executed a jury waiver prior to this time. Even assuming, however, that McNeal acted upon the advice of his attorney, we do not believe that such advice warrants a finding of incompetence. The decision of whether or not to proceed to a jury or a bench trial is essentially a decision of trial strategy and errors in the strategy and judgment on the part of counsel will not render his representation incompetent. *People v. Torres* (1973), 54 Ill. 2d 384; 297 N.E.2d 142; *People v. Somerville* (1969), 42 Ill. 2d 1, 245 N.E.2d 461.

As the second indication of his attorney's ineffectiveness, McNeal notes that his attorney made no objection to references in Smith's statement to accusations by him that McNeal was engaged in unrelated criminal activity. However, his attorney had no reason to enter such an objection because the judge had already declared the entire statement inadmissible against McNeal on other grounds.

■■ Finally, McNeal accuses his attorney of failing to object to the inclusion in his presentence report of a social investigation report which had been compiled as part of McNeal's juvenile record. McNeal concedes on appeal that pursuant to section 2—9(2) of the Juvenile Court Act (Ill.

Rev. Stat. 1975, ch. 37, par. 702—9(2)), "* * * records of disposition or evidence * * *" of anyone who has previously been adjudged a delinquent may be consulted in sentencing that person if he is subsequently convicted of a crime. McNeal argues, however, that social investigations are not "records of disposition or evidence." We do not agree with this contention. Section 5—1 of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 705—1) specifies the types of evidence which may be admissible at a disposition hearing following the adjudication of a minor as a ward of the court. Subsection (1) provides that "all evidence" which is helpful in determining "the proper disposition best serving the interests of the minor and public" is to be admitted "including oral and written reports." This subsection also provides that before any minor may be committed to the Department of Corrections, a "written report of social investigation" completed within the previous 60 days must be considered by the court. Subsection (3) of section 5—1 (Ill. Rev. Stat. 1975, ch. 37, par. 705—1(3)) delineates the information which must be included in "any report of social investigation" of a minor who has been adjudged a delinquent. It is clear, therefore, that written reports of social investigation are evidence admissible at dispositional hearings authorized by the Juvenile Court Act and are thus within the ambit of the phrase "records of disposition and evidence" as used in section 2—9(2) of that Act.

■■ Section 2—9(2) also specifies that the material from a person's juvenile record may be considered by a court in sentencing that individual for a subsequent crime only when that person has been adjudged a delinquent. The record, in the present case, shows that the social investigation to which McNeal objects was compiled pursuant to an adjudication of delinquency entered against McNeal. However, that finding of delinquency was later vacated so that an objection to the inclusion of the investigation in McNeal's presentence report probably would have been sustained. Yet, even assuming that his trial counsel did commit error in this regard, we do not believe that this single mistake is sufficient to state that counsel's representation of McNeal was below constitutional standards. Moreover, any prejudice to McNeal by such an error is slight. Any prejudice suffered related solely to the sentence imposed and had no effect on McNeal's conviction. In addition, the sentence of 14 to 20 years in the penitentiary which McNeal received for his conviction for murder is minimal (see Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1) and there clearly exist other factors in the record on appeal which support the sentence imposed.

Therefore, on the basis of this record, we feel that McNeal has received effective representation.

For the above stated reasons, the judgment of conviction of the Circuit Court of Cook County is affirmed.

Affirmed.

SIMON, P. J., and JIGANTI, J., concur.