THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* VICTOR WICKS, Defendant-Appellant.

(No. 12106; ▮▮▮▮▮▮▮▮▮)

Fourth District—November 21, 1973.

CRAVEN, P. J., dissenting.

Phillip A. Montalvo, of McRoberts, Sheppard, McRoberts & Wimmer, P. C., of East St. Louis, for appellant.

John J. McCarthy, Jr., State's Attorney, of Charleston, and George S. Dzielak, of Circuit Attorney Project, of Bloomington, for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

Defendant was convicted by a Coles County jury of the offense of forgery under Ill. Rev. Stat. 1971, ch. 38, sec. 17—3 and sentenced to four years probation conditioned on serving a six month incarceration period. Defendant raises two issues on appeal: (1) whether defendant's guilt was proven beyond a reasonable doubt; (2) whether the trial court erred in denying defendant's motion for a new trial upon the discovery of new evidence. We affirm the conviction on both issues.

On December 8, 1970, James LeBond, a student, found a purse belonging to Jean Mickey containing a number of blank checks and identification cards at the student union of Eastern Illinois University, Charleston, Illinois. He then went to several stores on the campus and made pur-

chases with signatures forged by a friend, Deborah Rush. After making these purchases LeBond and Rush returned to a fraternity house where defendant and LeBond resided. Rush testified that LeBond called defendant into the room, told him about the forgeries and asked him whether they should continue to which defendant replied affirmatively because "she [Miss Mickey] would not miss it." Ralph Pannell and John Seward, also fraternity brothers, then accompanied defendant, Rush and LeBond to Mattoon, Illinois, in a car driven by Pannell. According to Rush the conversation during the trip centered around the fact that they would not get caught. Upon arrival in Mattoon, LeBond and Rush made additional purchases with forged checks. Rush then testified that they went to a self-service liquor store, and everyone except LeBond accompanied her inside whereupon she gave a forged check for $106.48, this being the transaction in issue here. Defendant and the others then helped her carry the liquor back to the car.

The manager of the liquor store testified that on the date in question Rush was accompanied by "four or five colored boys [who] went from one end of the store picking up beer, bourbon, wine," and that Miss Rush stated, "You boys will have to help pay this back." He could not, however, identify anyone except Miss Rush. Pannell testified that nothing was ever said about forged checks, that only Rush and LeBond knew about the forgeries, and that defendant never went into the liquor store. Furthermore, defendant went along "probably for the ride." LeBond likewise testified that defendant was never told about the forgeries because he did not want anyone to know, and that defendant thought they were merely going shopping. He also stated that he did not see defendant go into the liquor store. Several other fraternity brothers testified that the reputation of Rush for truth and veracity was bad.

At the time of this trial Rush had pleaded guilty to forgery, Pannell and Steward were under indictment for the same offense, and LeBond had pleaded guilty to deceptive practices. Rush, however, had not been sentenced, and it was indicated to her by the State that she would probably be given probation. Rush had also indicated in her testimony that after her arrest she had asked the fraternity for money, and if they refused, "everybody's going to be in trouble." During this period Rush gave two statements. The first implicating only herself and LeBond, but the second implicated defendant and others and came only after the fraternity refused her request for money.

■■ It is a fundamental and well established rule in our judicial system that the credibility of witnesses and the weight to be accorded to their testimony is for the jury to decide. (*People v. Gates,* 29 Ill.2d. 586, 195 N.E.2d 161.) Therefore, the uncorroborated testimony of an accom-

plice is sufficient to sustain a conviction if it satisfies a jury beyond a reasonable doubt. This is so even if the testimony is attended with infirmities such as malice towards the accused or promises of leniency where the accomplice is a self-confessed criminal. (*People v. Wollenberg*, 37 Ill.2d 480, 229 N.E.2d 490.) Although such testimony is to be received with caution, the court will not disturb such a conviction unless it is plainly apparent that the requisite degree of proof is lacking. (*People v. Todaro*, 14 Ill.2d 594, 153 N.E.2d 563.) In this regard material corroboration or direct contradiction by other credible evidence is entitled to considerable weight. *People v. Hermens*, 5 Ill.2d 277, 125 N.E.2d 500.

■■ In the instant case defendant was convicted entirely upon the testimony of Rush, who had attempted to blackmail the defendant and others and who was a self-confessed criminal testifying upon a promise of leniency. Furthermore, her testimony was directly contradicted, and her reputation for truth and veracity had been impugned by other witnesses. Nevertheless, the jury was apprised of these various factors, and we must assume they took them into consideration in reaching a verdict. Furthermore, the contradictory testimony of LeBond and Pannell was also of questionable credibility, coming from fraternity brothers of the defendant, one of whom had already been convicted of a charge arising from the same incident and the other under indictment for the same crime. The story proffered in defendant's behalf by these witnesses that defendant went along "probably for the ride" is also not particularly credible. Moreover, there was corroboration of Rush's testimony. The manager of the liquor store testified that several men accompanied her into the store, and even the witnesses favorable to defendant placed defendant in the car at the scene of the crime at the exact time the crime was perpetrated. In light of these factors, we believe there to be sufficient proof in the record for the jury to have found defendant guilty beyond a reasonable doubt and legally responsible for the actions of the principal under Ill. Rev. Stat. 1971, ch. 38, sec. 5—2:

"A person is legally accountable for the conduct of another when:

\* \* \*

(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. \* \* \*"

Defendant also argues that the court erred in refusing to grant a new trial upon the discovery of new evidence. The newly discovered witness testified that she was a roommate of Rush and was told by Rush that if she didn't get the money she wanted, she was going to involve others,

322

including defendant. Dean Johnson from Eastern Illinois University testified that he was told by this witness that Rush had not told the truth on the stand. It was also elicited from this witness that she and Rush were not on friendly terms and that defendant was the purported father of her child.

■■■ "Applications for new trial on the ground of newly discovered evidence are not looked upon with favor by the courts, 'and in order to prevent, so far as possible, fraud and imposition which defeated parties may be tempted to practice, as a last resort to escape the consequence of an adverse verdict, such applications should always be subjected to the closest scrutiny by the court, and the burden is upon the applicant to rebut the presumption that the verdict is correct and that there has been no lack of due diligence. The matter is largely discretionary with the trial court, and the exercise of its discretion will not be disturbed except in a case of manifest abuse.' " (*People v. LeMorte*, 289 Ill. 11, 21, 124 N.E. 301.) To warrant a new trial the evidence must be non-cumulative and must conclusively reflect that it would likely change the verdict. (*People v. Brown*, 125 Ill.App.2d 336, 261 N.E.2d 11.) Furthermore, a distinction must be drawn between evidence which impeaches the credibility of a witness, and evidence which is probative in presenting a factual situation different from that to which a witness testified. "Newly discovered evidence, the effect of which is to discredit, contradict and impeach a witness, does not afford a basis for the granting of a new trial." *People v. Holtzman*, 1 Ill.2d 562, 568, 116 N.E.2d 338.

■■ The trial court in the instant case properly denied the motion for a new trial. The new evidence is substantially cumulative and clearly affects only the credibility of the witness, Miss Rush, a matter that had already been adequately placed before the jury by various witnesses.

■■ Although it has not been raised as an issue on appeal, we note that defendant has been granted four years probation conditioned on serving a six month incarceration period. Such a condition to probation, however, is now impermissible under the Unified Code of Corrections. (Ill. Rev. Stat., 1972 Supp., ch. 38, sec. 1005—6—3.) Since this case is now pending upon direct appeal, it has not reached a "final adjudication" for sentencing purposes, and the new Code of Corrections is thereby applicable. (*People v. Morrison*, 13 Ill.App.3d 652, 300 N.E.2d 325.) Accordingly, the condition of probation is to be deleted by the trial court.

We hereby affirm the judgment of the trial court and remand with the directions expressed herein.

Judgment affirmed and remanded with directions.

SMITH, J., concurs.

Mr. PRESIDING JUSTICE CRAVEN dissenting:

I am unable to agree with the majority that the evidence in this case is sufficient to establish the guilt of the defendant Wicks of the charged offense. While I recognize that the issue of credibility of witnesses is for the trier of fact, I find this record lacking in that quantum of proof necessary to establish guilt upon a theory of accountability for the conduct of another. See *People v. Tillman*, 130 Ill.App.2d 743, 265 N.E.2d 904.