THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
OTIS DUCKINS, Defendant-Appellant.

Second District   No. 77-78

Opinion filed April 17, 1978.

Ralph Ruebner and Alan Goldberg, both of State Appellate Defender's Office, of Elgin, for appellant.

Eugene Armentrout, State's Attorney, of Geneva (Phyllis J. Perko and Jan Tuckerman, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

The defendant, Otis Duckins, was convicted of armed robbery after trial by jury and, on appeal, contends the trial court erred in giving the following instruction to the jury over his objection:

"If you find that the defendant had exclusive possession of recently stolen property, and there was no reasonable explanation of his possession, you may infer that the defendant obtained possession of the property by Armed Robbery."

On July 1, 1976, an armed robbery occurred at the Owens gas station located at the intersection of Spring and Kimball Streets in Elgin, Illinois. Richard Gillette, the attendant on duty at the time of the robbery, testified that at about 6:30 p.m. a man with a gun entered the station and

ordered him into the back room. A second man, identified by Gillette at trial as defendant, came into the front room of the station where he was observed by Gillette through the door from the back room from 10 or 12 feet away. Gillette testified that the first man was standing in a position that made the gun he held clearly visible to defendant. The man with the gun told defendant to "wait a minute" and closed the door to the back room; he then took about $170 in currency and a carton of Winston cigarettes from Gillette and left. A hat with the word "Schlitz" printed on it was also missing from the front room of the station after the robbers left the premises.

Jeff Ott, an employee of a dairy located adjacent to and behind the gas station, testified that on the evening of the robbery at about 6:30 p.m. he observed a gold and black Chevelle automobile being parked illegally just behind the gas station in a private lot owned by his employer. He saw two black men get out of the car and walk around a three-foot fence, which separated the parking lot from the Owens property, and to the front of the gas station. The man who had driven the Chevelle went inside the station while the passenger, whom Ott identified in trial as defendant, walked up and down the sidewalk in front of the station and back and forth between the gas pumps and the station door. Ott's view of defendant was occasionally blocked by the gas station building. After a few minutes, Ott saw the two men climb over the fence, enter the car and drive away. Defendant was then wearing a "Schlitz" hat, which he had not been wearing previously, and the other man was carrying a carton of Winston cigarettes. Ott noted the license number of the car and gave it to the police who arrived shortly after the robbery. Both Gillette and Ott identified defendant as one of the robbers from photographs shown to them by police and pointed him out in a lineup two days after the robbery.

Defendant was arrested several hours after the robbery driving the gold and black Chevelle bearing the license number noted by Ott. A "Schlitz" hat was found in the car as well as a carton of Winston cigarettes and defendant had $81 in his pocket when he was arrested. He told police he and another man, whose name he did not know, had gone to the gas station for the purpose of buying oil for his cousin's car which they were using. The other man, whom he said he had just met, went into the station while defendant waited outside looking at an oil display; he told police he could not see what was going on inside at that time. He then walked into the station and noticed the door to the back room was closed and in a few minutes the other man came out carrying a carton of cigarettes and they left the station returning to defendant's cousin's home where the other man dropped defendant off and left to purchase some beer. Defendant

told police that the other man returned shortly afterwards saying the car had stopped around the corner and when defendant went to get it he was arrested.

At trial defendant told substantially this same version of the evening's occurrences. He also testified, however, that when he entered the station the door to the back room was half-closed but that he could see a telephone and, hearing the other man talking, assumed he was making a phone call or talking to the attendant. Defendant testified he then walked out to the sidewalk and looked around the area and that he never saw a gun or the hat or had any knowledge of an armed robbery.

Defendant's sole contention on appeal is that the court erroneously instructed the jury as to the inference of guilt which arises where there is evidence of possession of recently stolen property. He argues that the instruction as given in this case denied him due process of law because it cannot be logically concluded from the possession of recently stolen property that the defendant obtained it by means of an armed robbery, and that the instruction would allow the jury to ignore the elements of armed robbery, particularly that the property was taken by defendant by the use or threat of force and while armed with a dangerous weapon.

■■ The instruction objected to by defendant is Illinois Pattern Jury Instruction, Criminal, No. 13.21, and this court has twice considered and approved its use in armed robbery prosecutions. In *People v. Hendricks* (1st Dist. 1976), 41 Ill. App. 3d 178, 181, 353 N.E.2d 177, 180, the court reasoned that:

> "[T]he purpose of the inference mentioned in the instruction is not to prove the 'force' element of robbery, but rather that the defendant was one of the persons involved in the armed robbery described by the witnesses. [Citation.] The instruction as to possession of stolen property must be read with all other instructions given to the jury. [Citation.] These instructions adequately informed the jury of the elements of armed robbery. It is, therefore, not error for a jury to receive an IPI Criminal No. 13.21 instruction in an armed robbery case. [Citations.]" (Accord, *People v. Curtis* (3d Dist. 1972), 7 Ill. App. 3d 520, 525, 288 N.E.2d 35, 37; see *People v. Bolton* (4th Dist. 1974), 18 Ill. App. 3d 512, 515-16, 310 N.E.2d 22, 25; see also *People v. Flowers* (1958), 14 Ill. 2d 406, 152 N.E.2d 838, *cert. denied* (1959), 358 U.S. 942, 3 L. Ed. 2d 349, 79 S. Ct. 349.)

In the instant case the jury was correctly instructed as to each of the elements of armed robbery it must find before it could return a verdict of guilty and it was also instructed by IPI Criminal No. 1.01 that it must consider all instructions as a series not singling out one and disregarding others in reaching its verdict. The instruction to which defendant objects

would be more precise and less debatable if given in a modified form, such as:

> If you find that an armed robbery has occurred, as defined in these instructions, and if you further find that the defendant had exclusive possession of recently stolen property which had been taken in the armed robbery, and there was no reasonable explanation of his possession, you may infer that the defendant obtained possession of the property by Armed Robbery.

However, it was not error to give this instruction in the form used in this case when considered together with the other instructions given by the trial court. See *Barnes v. United States* (1973), 412 U.S. 837, 37 L. Ed. 2d 380, 93 S. Ct. 2357.

Defendant argues alternatively that because the State's case relied upon an accountability theory, the inference instruction to which he objects permitted the jury to hold defendant accountable for the robbery even if it found he did not aid or abet another person prior to or during the commission of the crime charged. He contends the accountability instruction and the inference instruction are in direct contradiction and that, therefore, his conviction must be reversed.

■■ We do not find the accountability instruction and the inference instruction to be in conflict so as to require reversal under the rule of *People v. Miller* (1949), 403 Ill. 561, 87 N.E.2d 649. The inference instruction was given only to offer the jury direction, under the law, as to how it might consider any evidence submitted to it that defendant had possession of property stolen in the armed robbery charged in the case and it in no way negates the other elements of that offense which also had to be proved. By the same token, IPI Criminal No. 5.03, defining accountability for the conduct of another, was given to apprise the jury of the principles of law it may consider where there is evidence someone other than defendant actively participated in the offense charged. "[N]o one instruction need state all the applicable law on any particular question. [Citation.] Rather, the whole series of instructions must be examined to see if they provide guidance for the jury which was neither unfair nor incomplete. [Citation.]" *People v. Henderson* (1976), 36 Ill. App. 3d 355, 382, 344 N.E.2d 239, 260; *People v. Allen* (1976), 35 Ill. App. 3d 342, 341 N.E.2d 431.

Under the circumstances of this case the trial court correctly instructed the jury on the issues to be considered by it and, there being no error in the case, the judgment of the Circuit Court of Kane County is affirmed.

Affirmed.

RECHENMACHER and WOODWARD, JJ., concur.