THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DANIEL J. GAUWITZ, Defendant-Appellant.

Fourth District    No. 15587

Opinion filed January 22, 1980.

John A. Slevin, John R. Pusey, and Gregg N. Grimsley, all of Vonachen, Cation, Lawless, Trager & Slevin, of Peoria, for appellant.

Richard M. Baner, State's Attorney, of Eureka (Marc D. Towler and Karen L. Boyaris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WEBBER delivered the opinion of the court:

Following a jury trial in the circuit court of Woodford County, defendant was convicted of the offense of robbery in violation of section 18—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 18—1). He was sentenced to nine years' imprisonment. This appeal ensued.

Three principal issues are raised on appeal: (1) reasonable doubt; (2) improper instructions to the jury; and (3) lack of confrontation between the victim and the defendant. We affirm.

The record reveals another dismal episode in mankind's eternal quest for the perfect crime, a product of fiction, whose chief characteristics are the belief of the perpetrator that he will never be apprehended and the further belief in the inability of the authorities to convict the perpetrator, if apprehended. Generations of human experience have shown both characteristics to be a gossamer illusion, but this appears to have no discouraging effect upon those who insist upon ignoring history.

In broad outline, the scheme concocted hereby by the defendant was to obtain money from a gasoline station in Metamora by telephoning threats to that station. In pursuit of that scheme, defendant recruited one Andrew Sharp, who was also indicted for the offense, but received leniency in return for his testimony. Defendant's scheme required three persons so one Larry Schertz, who was also indicted, was recruited as the third man. Schertz did not testify in this case.

Testimony at trial disclosed the following: the female station attendant received a telephone call in the station at about 11:15 p.m. on July 2, 1978. A male voice told her that a man across the street was holding a gun with a scope on it aimed at her and that unless she followed directions, she would be shot. The directions were to take the station's money, place it in a bag and put the bag at the back of the station at the door to the men's room; then to wait before calling anyone. During the telephone call, a customer came into the station and the attendant whispered to him that she was being robbed and to call the police. The customer left and drove directly to the Metamora police station where he found a deputy sheriff and told him what had happened.

Two other witnesses were passing by in a car and saw the attendant go to the outside of the station; then, a shirtless young man with dark hair ran from the general area across the street directly in front of their car.

The deputy testified that he saw a man, whom he later learned to be the defendant, in a phone booth near the police station when the customer came up to inform him of the robbery.

One Jeffery Allen testified that in October 1978, he talked to the defendant at a tavern. At that time the defendant told him that the robbery of the station was the best crime ever committed and that he would never be caught. Allen had been charged with the burglary of the defendant's father's house; it was brought out that in exchange for his testimony Allen had been promised leniency, *i.e.*, the State's Attorney would drop some pending charges and would recommend probation on the burglary charge.

The critical testimony was supplied by Andrew Sharp, an admitted accomplice to the scheme. He testified that the defendant called him by telephone at about 9 a.m. on the morning of July 2 and asked if he wanted to make some money. Sharp told defendant that he would call him back and did so about 30 to 45 minutes later. Defendant stated that he had a scheme but that a third person would be needed. Sharp suggested Schertz. Defendant said that he would call Schertz and that all three would meet in Metamora at about 9 p.m. that night. Defendant would then explain his plan in detail.

Sharp's further testimony revealed the details: that defendant would call the station and tell the attendant that there was a gun trained on her; that she was to place the station's money in a bag at the rear by the men's room; that Sharp was to pick up the money; and that Schertz was to stand across the street from the station.

Sharp continued: the three met as planned and were riding in Sharp's truck. They went to the station about 9 p.m. and purchased some gasoline. While there, Sharp obtained the telephone number of the station

and gave it to defendant. They then drove around until about 11 p.m. at which time Sharp dropped defendant off at the Metamora square and Schertz off across the street from the station. He then parked the truck nearby, removed his shirt and waited at the rear of the station. After he heard the telephone ring, someone left the station in a car at a high rate of speed. Then the attendant left a bag at the rear of the station. He obtained the bag and in running across the street was almost struck by a passing car.

Sharp continued: he returned to the truck with the money and took it out into the country where he secreted it under a bridge. He then returned to Metamora and after some difficulty collected his confederates, defendant and Schertz. They then obtained the money from the bridge and divided it among themselves. The total was about $600.

The matter of leniency for Sharp in return for his testimony was fully explored, both on direct examination by the State and on cross-examination by the defense.

The record does not reveal when defendant was arrested. However, some of the discovery material, specifically statements of others and Allen, implicates the defendant as well as Sharp and Schertz in the robbery. Sharp testified that he "turned himself in" on November 9, 1978, and was indicted for the robbery. In return for his testimony the State's Attorney agreed to reduce the charge to theft of property over $150 in value and to recommend probation. The direct and cross-examinations of Sharp disclose that he fully understood the nature of the robbery and the possible penalty therefor.

Defense testimony consisted principally of family members testifying that defendant, Sharp and Schertz spent the night of July 1 at the Gauwitz residence and remained there on the morning of July 2. The defense also offered the testimony of a telephone company employee that the only call from the Sharp residence to the Gauwitz residence on July 2, 1978, was at 1:12 p.m. and lasted less than two minutes.

Based on the foregoing, the jury found defendant guilty of robbery from the presence of the station attendant. The jury had been supplied with four forms of verdict which may be summarized as follows: (1) guilty of robbery from the person; (2) not guilty of robbery from the person; (3) guilty of robbery from the presence; and (4) not guilty of robbery from the presence—all of these naming the station attendant. As indicated above, the jury returned a guilty verdict on number (3); the other verdict forms were not signed. Subsequent motions for new trial and for modification of sentence were denied, and this appeal followed.

Defendant's first contention is that he was not proved guilty beyond a reasonable doubt since the critical testimony was furnished by an

accomplice who had been promised leniency. Both parties cite the recent case of *People v. Wilson* (1977), 66 Ill. 2d 346, 362 N.E.2d 291. In that case the supreme court said that uncorroborated testimony of an accomplice is a sufficient ground upon which to base a conviction, but such testimony should be subjected to careful scrutiny and should have the absolute conviction of truth. In *Wilson* the court held that the testimony fell short of these standards because there was not an absolute conviction of truth in the testimony, the accomplice had been promised immunity and there was no corroboration of his testimony. In *People v. Hermens* (1955), 5 Ill. 2d 277, 125 N.E.2d 500, also cited by both parties, the court held that both material corroboration or direct contradiction in accomplice testimony are entitled to considerable weight. It found direct contradiction in the testimony of the two accomplices and reversed. In *People v. Williams* (1976), 65 Ill. 2d 258, 357 N.E.2d 525, there were two witnesses and a lack of corroboration. The court held that the overwhelming impeachment of the witnesses, coupled with the lack of corroboration, rendered the evidence so unsatisfactory as to require reversal. In *People v. Wicks* (1973), 15 Ill. App. 3d 318, 304 N.E.2d 134, this court held that corroboration was entitled to great weight.

■■ In the case at bar, we find that the accomplice's (*i.e.*, Sharp's) testimony is credible and is corroborated in many respects. It was therefore for the jury to decide.

Without going into every detail of the corroboration, we note the following as significant: (1) the testimony of the station attendant which bore out the particulars of the plan; (2) the testimony of the passersby who saw a shirtless young man, who was in fact Sharp, run from the station; (3) the testimony of the deputy who saw the defendant in the telephone booth at about the time of the robbery; (4) the testimony of Allen concerning defendant's boasting about the matter.

Sharp's testimony was somewhat discredited by the discrepancy of times on the telephone calls. However, there was no denial of the fact of the calls, and we do not regard the time discrepancy as material. The alibi defense was for the jury to evaluate.

The jury was properly instructed as to how to deal with accomplice testimony and we will not interfere with their finding.

We turn next to the issue regarding the instructions. As indicated above, the trial court gave the jury four forms of verdict. While it is not apparent from the record, we can only infer that the court did so by reason of the existence of two separate indictments, one charging robbery from the person and a second charging robbery from the presence, each making the station attendant as the victim. The People first contend that the issue has been waived because the defendant failed to file a timely

post-trial motion. Judgment was entered on the verdict on February 9, 1979, and the cause was then set for sentencing hearing on March 16, 1979. It was afterwards continued to March 30, 1979. On that date defendant was sentenced to nine years' imprisonment and on his motion a notice of appeal was filed and counsel on appeal appointed.

On April 9, 1979, defendant filed a motion to dismiss his appeal, a post-trial motion and a motion to reconsider sentencing. It will be noted that this was approximately 60 days after entry of judgment. The Code of Criminal Procedure of 1963 requires that a post-trial motion be filed within 30 days. (Ill. Rev. Stat. 1977, ch. 38, par. 116—1(b).) Failure to file the motion within the allotted time is a ground for its denial. (*People v. Colletti* (1971), 48 Ill. 2d 135, 268 N.E.2d 397.) The People therefore contend that the issue has been waived by the defendant.

■■ However, we view the doctrine of waiver as a two-way street. At no time on the trial level did the People ever move to strike the motion or ask for its denial for lack of timeliness. Indeed, they participated fully in its argument, and the question of timeliness was first raised on appeal. We hold the People have waived this point and that the question of the instructions is properly before this court.

Defendant's argument takes as a first premise that the giving of four verdict forms was a violation of Supreme Court Rule 451(a) (73 Ill. 2d R. 451(a)). This rule requires the use of Illinois Pattern Jury Instructions, Criminal (1968) (hereinafter IPI Criminal), whenever appropriate. Such instructions were used in this case, namely IPI Criminal Nos. 26.02, 26.05.

The argument then progresses to the proposition that the use of separate forms of verdict somehow conveyed to the jury that robbery from the person and robbery from the presence were separate offenses and that a finding of guilty on one became a compromise verdict. We cannot agree.

■■ It is elemental that no one instruction must state all the law on a particular question but that all the instructions must be read as a whole to determine whether they fairly inform and guide the jury. (*People v. Duckins* (1978), 59 Ill. App. 3d 96, 375 N.E.2d 173.) It is likewise elemental that the prime function of the instructions is to communicate with the jury; it is not a function of the instructions to serve as a basis for a shell game among lawyers. Any use of IPI Criminal which makes the dark realm of jurisprudence more understandable to laymen is to be commended.

The instructions as a whole in this case properly conveyed to the jury what the situation was. Two IPI Criminal No. 2.01 instructions informed them that the defendant was charged with robbery from the person and also from the presence of the victim. IPI Criminal No. 14.03 in a single

instruction reiterated exactly the statutory definition of robbery. IPI Criminal No. 14.04 defined the issues in robbery using the precise wording of the instruction as published. Under the instruction as a whole it would be impossible for the jury to do anything but use the verdict form which conformed to the evidence and this is precisely what it did. The result gives the lie to the argument.

Defendant relies upon *People v. Adams* (1977), 45 Ill. App. 3d 334, 359 N.E.2d 840, which we find inapposite. That case concerned itself with what was argued to be a variance between the indictment and the proof; namely, that the indictment read "from the person or presence" while the proof showed "from the presence" only. The court elected to treat the language about "person" as surplusage. In the case at bar no such confusion could possibly arise. In fact, in the case at bar the separate indictments, the separate verdict forms and the singular instructions on statutory definition and issues forfend the problem presented in *Adams.*

We do not understand defendant's argument that the verdict could have been a compromise. To assume such a proposition is to assume that either "person" or "presence" in the robbery statute (Ill. Rev. Stat. 1977, ch. 38, par. 18—1) is a lesser offense. Such is patently not the case.

■ Defendant's last contention is that confrontation between the offender and the victim is an essential element in a robbery case. We do not agree. From earliest times in this State robbery might be committed by intimidation. In The Revised Code of Laws of Illinois of 1827 in section 61 of the Criminal Code, robbery was defined as "* * * the felonious and violent taking of money, goods or other valuable thing, from the person of another, by force or intimidation." In *Burke v. People* (1893), 148 Ill. 70, 74, 35 N.E. 376, the supreme court said, "The *gist* of the offense is the force or intimidation * * *."

The element of intimidation has been incorporated in the Criminal Code of 1961 by use of the language, "by threatening the imminent use of force." Ill. Rev. Stat. 1977, ch. 38, par. 18—1.

Confrontation is not necessary to intimidation. Etymologically, intimidation implies a making timid or fearful. This can occur from afar off, as everyday human experience as shown; *e.g.,* one intimidated by the nuclear arsenal of an unfriendly nation. Modern technology has greatly expanded the potential for intimidation. In an earlier, and perhaps simpler, day confrontation may have been necessary to establish a present ability to do violence, but the advent of electronic communications has vastly expanded the ability of one bent on savagery to overcome the psyche of another.

The matter was dealt with directly in *People v. Smith* (1978), 66 Ill. App. 3d 957, 384 N.E.2d 473, *appeal allowed* (1979), 74 Ill. 2d 589. In that case the court held that the threat of force coming over the telephone did

not change the nature of the threat or its effect in overcoming the will of the victims.

The judgment and sentence of the circuit court of Woodford County are affirmed.

Affirmed.

GREEN and TRAPP, JJ., concur.